UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE<br><br>WBY, INC. a/k/a FOLLIES,<br><br>Debtor | CHAPTER 11<br><br>CASE NO. 16-52291-JRS<br><br>JUDGE SACCA |

**MOTION FOR ORDER ESTIMATING
CERTAIN CONTINGENT OR UNLIQUIDATED CLAIMS
UNDER BANKRUPTCY CODE SECTIONS 105(a) AND 502(c)**

WBY, Inc., d/b/a Follies ("*Debtor*"), hereby moves this Court to enter an order under Sections 105(a) and 502(c) of title 11 of the United States Code (the "*Bankruptcy Code*"), estimating certain contingent or unliquidated claims solely for reserve account purposes.  In support of this Motion, Debtor respectfully shows the Court as follows:

## I.  Relief Requested

1.  Debtor moves this Court to estimate the claims of certain Class C creditors in a manner consistent with the Plan.  Debtor seeks an estimation of unliquidated Class C claims to more precisely establish the amounts to be

deposited and held in the Reserve Account[1] under the Plan.  Debtor does not seek to liquidate the Class C claims for distribution, as this Court has relegated that duty to the District Court (*see* Doc. No. 539).  Debtor seeks only to provide for the timely and efficient allocation of assets under the Plan, for the benefit of all parties in interest, while providing adequate funds for contingent and unliquidated claims in the event that they ultimately are allowed.  The relief requested is appropriate because after the Plan was confirmed, Debtor conducted discovery of two claimants and analyzed the claims of others and can now estimate amounts owed in the event Class C claimants prevail in the FLSA Claim Litigation in District Court.

2. Debtor does not seek to modify the Plan, but seeks only a determination of amounts to be reserved for Class C claimants pursuant to the terms of the Plan.  Nothing in this Motion would prevent the Class C creditors from recovering the full amount of their allowed claims, regardless of the ultimate allowed amount of the claims (although it is unlikely that the allowed amounts will exceed the figures set forth herein based on the information available to Debtor and also on the arguments advanced by Class C creditors in the District Court litigation).[2]

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan.

[2] Debtor has also sought relief from this Court to clarify, modify, and/or supplement the terms of the Plan [Doc. No. 545].  Such relief, however, is based on actions taken by certain Class D creditors.  The relief sought in the instant

2

## II. Jurisdiction

3.  This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4.  The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105(a) and 502(c).

## III. Background

5.  On February 5, 2016 (the "*Petition Date*"), Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*"). Debtor sought bankruptcy relief to, among other things, resolve certain Fair Labor Standards Act ("*FLSA*") claims asserted against it and its management and owners.

6.  On October 24, 2016, Debtor filed a Plan of Reorganization Disclosure Statement [Doc. No. 141]. On December 20, 2016, Debtor filed an amended (and now confirmed) Plan [Doc. No. 426]. On December 22, 2016, the Court entered the Confirmation Order [Doc. No. 428].

7.  Class C of the Plan consists of 16 claimants asserting FLSA Litigation Claims who have not opted in to settlement of such claims. Specifically, Class C is

---

Motion does not implicate the Class D claims and related creditors at issue in Debtor's other motion.

3

comprised of two waitress plaintiffs and 14 entertainer plaintiffs, 13 of whom are represented by Jones & Walden, LLC and Ainsworth Dudley, Esq. (the "*Jones Plaintiffs*"). The remaining entertainer, Brezzy Hurst, is represented by separate counsel. By this Motion, Debtor seeks estimation only of the Jones Plaintiffs' claims.

8. Under the Plan, if the Debtor is found liable for the FLSA Litigation Claims in District Court litigation, then Debtor is obligated to pay Class C creditors 100% of their liquidated claims. Pursuant to the terms of the Plan, Equity Holders deposited the sum of $500,000 into the Reserve Account on the Effective Date. Thereafter, Debtor is obligated to and will deposit the sum of $100,000 per month into the Reserve Account "until the Reserve Account contains 110% of the amount of the claims liquidated according to the preceding paragraphs." Plan, § 4.2.3. The preceding paragraph of the Plan stated that "the Bankruptcy Court will enter orders liquidating each of the claims upon (1) consent by the parties as to amount, (2) mediation of the claims by a bankruptcy judge or (3) after evidentiary hearing. . . ." Plan § 4.2.1.

9. In the Confirmation Order, the language concerning this Court's liquidation of the claims, and the exclusive jurisdiction of this Court to do so, was amended to reflect that "this Court shall retain jurisdiction to determine, at its discretion, the amount due Class C Claimants as to wages (including tip-outs)" and

4

that "this Court shall not retain exclusive jurisdiction to adjudicate controversies regarding classification, allowance, or liquidation of any claim." *See* Conf. Order ¶ 2.e-f. The Court later entered an order allowing the Class C claims to be liquidated in the District Court. *See* Doc. No. 539.

10. At the time when the Plan was developed and confirmed, discovery had been served on the FLSA claimants and remained pending in the multiple claims disputes involving the FLSA claimants, and the Jones Plaintiff entertainers had not provided critical details of their FLSA Litigation Claims. On July 1, 2017, however, the Jones Plaintiff entertainers filed their Motion for Leave to File a Second Amended Complaint in the District Court [Becton Dist. Ct. Doc. No. 34, 34-2]. Only in the Second Amended Complaint did the Jones Plaintiff entertainers identify the workweeks applicable to their claims in the District Court litigation and concede that no entertainer is eligible for overtime pay. *See* Second Amended Complaint, attached hereto as *Exhibit A*, ¶¶ 9-50. These specifications have enabled Debtor to calculate the potential damages asserted by the Jones Plaintiff entertainers and the Jones Plaintiff waitresses.

11. Estimation of the Class C claims is appropriate at this juncture because, when committing to make deposits into the Reserve Account, Debtor believed the FLSA Claim Litigation would be complete within a few months. Now, nine months after Plan confirmation, the FLSA Claim Litigation remains

5

pending, and Debtor wishes to accurately reserve for payment of the Class C claims. In addition, since it appears that the FLSA Litigation Claims may be liquidated by the District Court, rather than this Court, Debtor believes that the ultimate decision on the allowed claim amounts may be several more months in the future.

12. To date, all payments made by Debtor into the Reserve Account were for payment of its obligation to Class D creditors. Going forward, Debtor's future contributions to the Reserve Account will be for payment on Class C claims. Debtor's obligation to make additional $100,000 monthly payments to the Class C Reserve Account will commence shortly.

13. An estimation of Class C claims will benefit Debtor and will not prejudice any Class C creditor because the Reserve Account will retain sufficient funds to ensure payment of Class C claims, if they are ultimately allowed. If insufficient funds are on deposit, the principals of the Debtor signed a personal guaranty, have tolled the statute of limitations on Recovery Actions, and the Class C creditors have been assigned the right to pursue Recovery Actions against the principals. *See* Doc. No. 428 at 7-9. Pursuant to Debtor's calculation of the Class C claims, Debtor believes the total damages that could be awarded to the Jones Plaintiff entertainers does not exceed approximately $335,000, and the total damages that could be awarded to the Jones Plaintiff waitresses does not exceed

6

approximately $131,000.  By this Motion, Debtor does not seek to estimate the claims of the Class C claimant Brezzy Hurst, which was filed in the amount of $121,344.00 (*see* Claim No. 2), since the District Court litigation involving Brezzy Hurst is at a much more advanced stage than litigation involving the Jones Plaintiff entertainers.  As such, and to ensure that sufficient funds exist to pay all Class C creditors, Debtor proposes that the Class C claims be estimated at $587,661.92, and that Debtor fund the Reserve Account in the amount of $646,428.11, which is the amount of such claims, plus 10 percent, as provided under the Plan.

## IV.  Argument and Authorities

14.     Debtor seeks an estimation of the Class C claims for the purpose of accurately estimating amount to be reserved for the payment of Class C claims. This Court has the statutory authority to estimate claims under Bankruptcy Code Sections 105(a) and 502(c).  Further, the relief requested herein is consistent with the terms of the Plan and Confirmation Order because, by this Motion, Debtor merely requests an order directing the Debtor to make deposits into the Reserve Account that reflect the potential distributions to be made to Class C creditors.

**A.     Bankruptcy Code Section 502(c) Authorizes Estimation For The Purpose Of Allowance.**

15.     Bankruptcy Code Section 502(c) provides that: "There shall be estimated for purpose of allowance under this section—any contingent or

unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . ." 11 U.S.C. § 502(c).

16. Section 502(c) serves two purposes. First, "it avoids the need to await the resolution of pending lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions." *In re Southern Cinemas, Inc.*, 256 B.R. 520, 533 (Bankr. M.D. Fla. 2000) (citing *Beaumont v. Durkay (In re Ford)*, 967 F.2d 1047, 1053 (5th Cir. 1992)). "By so doing, the trustee can more rapidly determine the payout to each creditor who, in the meantime, receives no interest on its claim." *Beaumont*, 967 F.2d at 1053. Second, it promotes "a fair distribution to creditors through a realistic assessment of uncertain claims." *In re Southern Cinemas, Inc.*, 256 B.R. at 533.

17. Although Section 502(c) provides that a court shall estimate claims for the purposes of "allowance," courts have used the section for more limited purposes, such as estimating amounts to be placed in reserve funds. *See, e.g., In re Jacom Computer Servs., Inc.*, 280 B.R. 570, 571, 573 (Bankr. S.D.N.Y. 2002) (granting an application to estimate certain disputed claims at zero for the purpose of establishment of an appropriate reserve); *In re Drexel Burnham Lambert Grp. Inc.*, 138 B.R. 723, 740 (Bankr. S.D.N.Y. 1992) (requiring that a trustee fund a claims reserve based on such amounts for disputed claims as the court would "estimate for reserve purposes").

8

18. Courts have applied Section 502(c) in this way because "Congress intended that all claims, including unliquidated and contingent claims, be 'dealt with' in the bankruptcy proceeding. Further, it was intended that 'all claims against the debtor be converted into dollar amounts.'" *Addison v. Langston (In re Brints Cotton Mktg., Inc.),* 737 F.2d 1338, 1340 (5th Cir. 1984) (citations omitted).

19. "[E]stimation does not require that a bankruptcy judge be clairvoyant. The court need only arrive at a reasonable estimate of the probable value of the claim . . . ." *In re Baldwin–United Corp.,* 55 B.R. 885, 898 (Bankr. S.D. Ohio 1985). Further, "[t]here is no set procedure to estimate the amount of a claim. The bankruptcy court is bound by the legal rules which govern the ultimate value of the claim [and] should use whatever method is best suited to the circumstances." *In re Trigeant Holdings Ltd.*, 2015 WL 1514175 at *2 (Bankr. S.D. Fla. Mar. 27, 2015) (citing *Addison*, 737 F.2d at 1341). There are "no other limitations on the court's authority to evaluate the claim." *In re Evans Products Co.*, 60 B.R. 863, 869 (Bankr. S.D. Fla. 1986) (quoting *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135-36 (3d Cir. 1982)).

20. Finally, courts have substantial discretion in making estimation determinations. See *Bittner*, 691 F.2d at 135 (holding that estimation requires only "sufficient evidence on which to base a reasonable estimate of the claim"). While a court's methodology can be probabilistic, a court does not have to hew strictly to

9

calculations of expected value.  *Compare, e.g., In re Windsor Plumbing Supply Co.*, 170 B.R. 503, 521-22 (Bankr. E.D.N.Y. 1994) ("The estimated value of a claim is then the amount of the claim diminished by the probability that it may be sustainable only in part or not at all."), *with, e.g.*, *Bittner*, 691 F.2d at 136 (approving claims estimation according to the "ultimate merits" of a litigation claim "rather than the present value of the probability that [the claimants] would succeed in their state court action").

**B.    Bankruptcy Code Section 105(a) Grants This Court Latitude In Implementing Section 502(c).**

21.    Under Bankruptcy Code section 105(a), this Court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  In applying Section 105(a) where a debtor seeks to estimate claims, "[m]ethods used by bankruptcy courts to estimate a claim include summary trials, evidentiary hearings, and simple review of the pleadings and oral argument," *In re Mud King Products, Inc.*, 2015 WL 862319 at *3 (S.D. Tex. Feb. 27, 2015) (citation omitted), and various iterations thereof.  *See, e.g.*, *In re Mona Lisa at Celebration, LLC*, 410 B.R. 710, 717 (Bankr. M.D. Fla. 2009) (requiring the parties to participate in "an abbreviated estimation proceeding" if court-ordered mediation is not successful); *Windsor Plumbing*, 170 B.R. at 517 (estimating a claim "based upon . . . written submissions" of facts in lieu of "mak[ing] findings of fact after [a] hearing").  The overarching purpose of estimation and of these

10

various procedures is to find "the most efficient and economical method to … proceed toward confirmation of a plan", *In re Mona Lisa*, 410 B.R. at 717, and realize the speed and efficiency goals of Chapter 11.  *See Bittner*, 691 F.2d at 136-137.

22.   Here, Debtor does not seek to liquidate the claims, nor to set a cap for the recovery of Class C creditors if their claims are ultimately allowed.  Instead, Debtor requests that the Court enter an order establishing an amount in the Reserve Account for payment of allowed Class C claims based on Debtor's calculation of the maximum amount of such claims, plus 10%.  This relief is consistent with the Plan, but provides an express figure to deposit into the Reserve Account.  Thus, the Class C creditors will remain assured of their payments under the Plan because the source of the payments, the Reserve Account, will be appropriately funded.

23.   Debtor will be able to use the funds it would otherwise be required to deposit into the Reserve Account for the operations of the business.  The difference between the amounts Debtor would be required to fund if the deposits are based on the Class C proof of claim, rather than the amounts set forth herein, are significant.  In allowing the estimation of the Jones Plaintiffs' claims, Debtor's obligations to fund the Reserve Account would likely be reduced by more than $1 million.

24.   Under the Plan, the Reserve Account must be funded to 110% of the liquidated claims of Class C creditors.  Because the District Court litigation

11

remains ongoing, it is likely that the liquidation of Class C claims will not take place for many months.  Allowing for the estimation of the Class C claims will permit Debtor to efficiently allocate the $100,000.00 per month it is required to deposit into the Reserve Account under the Plan, rather than significantly overfunding the Reserve Account based on the overstated claims filed in this Court by Class C creditors.

**C.     This Court Can Estimate The Maximum Amount Of The Class C Claims Based On The Hours and Workweeks Allegedly Worked By Each Class C Creditor.**

25.     Estimation is appropriate at this time pursuant to Section 502(c) of the Bankruptcy Code because the FLSA Claim Litigation has several milestones before its resolution.  The parties have not completed discovery, no dispositive motions have been filed, and a trial date has not been set.  It is likely that the disposition of the District Court litigation will be many months in the future.  As such, estimating the Class C claims is in the best interest of Debtor and creditors because it will permit Debtor to fund the Reserve Account sufficiently for Class C creditors, while at the same time making funds available for operations, and avoid undue delay of the administration of the case.

26.     Debtor's calculation of the Jones Plaintiff entertainers' claims is based on the total hours per workweek alleged by each plaintiff for those workweeks that are considered timely for purposes of their FLSA claims.  The issues of whether

12

the Jones Plaintiff entertainers (i) were employed by Debtor, (ii) performed "work" considered compensable under the FLSA, and (iii) the amount and extent of such "work", if any, that would entitle them to recovery are matters of factual and legal dispute in the FLSA Claims Litigation.  Nevertheless, in First Amended Complaint filed in District Court, the Jones Plaintiffs have alleged that they typically "worked" three shifts per week, for up to 12 hours per shift, i.e., no more than 36 hours during any given week.  *See* First Am. Compl., Dist. Ct. Doc. No. 22, ¶¶ 48.  Based on this allegation, the Jones Plaintiffs in the *Becton* case have failed to state a claim for any overtime wages.  *Id.*   The First Amended Complaint is attached hereto as *Exhibit B*.

27.    Using the dates of the applicable workweeks pleaded in the proposed Second Amended Complaint and the $7.25 minimum hourly wage, Debtor has calculated the Jones Plaintiffs' damages for entertainers to be a total of $335,049.42.  If the District Court finds that the defendants lacked a good faith, reasonable basis for any FLSA violations for which they are found liable, then the District Court may order 100% liquidated damages for those violations.  *See* 29 U.S.C. § 260.  This estimation includes the assumption that the Jones Plaintiffs' claims date back to the maximum three-year statute of limitations period under the FLSA, calculated from the Petition Date.[3]

---

[3] The parties dispute whether the pendency of the bankruptcy action tolls the statute of limitations for those claimants not covered by a tolling agreement.  *See* Defendants' Memorandum of Law in Support of Their Partial Motion to Dismiss, p. 10 [Dist. Ct. Doc. No. 21-1]; Defendants' Reply in Support of Their Motion to Dismiss, p. 10 [Dist. Ct. Doc. No. 31].

28.     As to the two Jones Plaintiff waitresses, who are also pursuing claims against Debtor and Equity Holders in District Court in a separate complaint, *Smith v. WBY, Inc.*, Case No. 16-CV-4017, Debtor also requests to estimate those claims. In their First Amended Complaint, filed on May 8, 2017, attached hereto as *Exhibit C* [Smith Doc. No. 27], the waitresses state their workweeks and estimated hours. *See* Smith First Am. Compl, ¶ 24. Constance Smith alleged a maximum of $59,232.50 in back wages, based on 86 workweeks, as calculated from the Petition Date, *see id.* at ¶ 8, and, with an hourly wage of $7.25, a maximum of 45 hours. *See id.* at ¶ 24.

29.     Courtney Ellington, the other waitress Jones Plaintiff, alleged a maximum of $72,046.00 in back wages, based on 138 workweeks, as calculated from the Petition Date, *see id.* at ¶ 8, and, with an hourly wage of $7.25, a maximum of 36 hours. *See id.* at ¶ 24. Thus, like the Jones Plaintiffs in the *Becton* litigation, Ms. Ellington also fails to state a claim for any overtime wages. A summary of the estimation analysis is attached hereto as *Exhibit D*.

30.     With damages not likely to exceed $587,661.92, the Court should enter an order directing the Reserve Account to be funded in the amount of $646,428.11, which is the total maximum amount that could be paid to Class C creditors if they prevail in the District Court litigation, plus 10 percent. This amount benefits Debtor by reducing its ongoing monthly deposit, and provides

14

ample reassurance to Class C creditors of their payment of the full amount of their allowed claims.

## V. Reservation of Rights

31. In connection to its proposal herein that the Jones Plaintiffs' claims be estimated for purposes of funding the Reserve Account, Debtor reserves all rights and defenses in the FLSA Claim Litigation, irrespective of the disposition of this Motion.

WHEREFORE, Debtor respectfully requests that the Court enter an order estimating the contingent or unliquidated Class C claims, solely for the purpose of specifying the amounts to be deposited in the Reserve Account, without prejudice to the right of any Class C creditor to recover the amount of her allowed claim in full, and granting such other relief as is just and proper.

This 16th day of October 2017.

                                                Counsel for WBY, Inc.

                                                */s/ Edward F. Danowitz*
                                                Edward. F. Danowitz
                                                Ga. Bar No. 003180
                                                Danowitz Legal, PC
                                                300 Galleria Parkway Suite 960
                                                Atlanta, GA 30339
                                                770-933-0960
                                                Edanowitz@danowitzlegal.com

**Exhibit B**

| Claim No. | Plaintiff | Total Workweeks | Max Wages Owed |
|---|---|---|---|
| 85 | Karenna Van Hook | 72 | $ 18,792.00 |
| 86 | Ebony Yarbrough | 55 | $ 14,243.14 |
| 88 | Noelle Green | 164 | $ 42,878.57 |
| 89 | Rodrinna Brooks | 108 | $ 28,076.14 |
| 90 | Mikki Williams | 123 | $ 32,214.86 |
| 91 | Courtney Sacdalan | 95 | $ 24,906.86 |
| 96 | Toni Davis | 43 | $ 11,297.57 |
| 98 | Jessica Saunders | 55 | $ 14,466.86 |
| 107 | Cydney Bell | 96 | $ 24,944.14 |
| 111 | Grace King | 56 | $ 14,690.57 |
| 112 | Hailey Lytle | 161 | $ 41,983.71 |
| 124 | Samantha Schaffer | 135 | $ 35,346.86 |
| 81 | Shanterria Cermon | 120 | $ 31,208.14 |
| 108 | Constance Smith | 86 | $ 59,232.50 |
| 109 | Courtney Ellington | 138 | $ 72,036.00 |
| 2 | Brezzy Hurst | n/a | $ 121,344.00[4] |
| | | *Total* | $ 587,661.92 |

---

[4] The Brezzy Hurst litigation is more advanced than that of the Jones Plaintiffs. For the purpose of this motion to estimate, the amount listed is that amount submitted with a summary judgment motion in the District Court litigation.

## CERTIFICATE OF SERVICE

This is to certify that on the 16th day of October 2017 I served the United States Trustee, all parties in interest, and parties requesting notice in the foregoing matter with a copy of *Debtor's Motion for Order Estimating Certain Contingent or Unliquidated Claims Under Bankruptcy Code Sections 105(a) and 502(c)* by via electronic transmission to the following Registered Users in accord with BLR 5005-8:

Jason J. DeJonker
Jason.dejonker@bryancave.com

Brian C. Walsh
Brian.walsh@bryancave.com

Lisa Wolgast
lwolgast@mmmlaw.com

Rebekah L. Bailey
bailey@nka.com

Tamara Miles Ogier
tmo@orratl.com
Leon S. Jones
ljones@joneswalden.com

Ainsworth G. Dudley
adudleylaw@gmail.com

Thomas Wayne Dworschak
thomas.w.dworschak@usdoj.gov

> */s/ Edward F. Danowitz*
> Edward. F. Danowitz
> Ga. Bar No. 003180