IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WBY, INC. dba FOLLIES, | ) | Case No. 16-52291-JRS |
| | ) | |
| Debtor. | ) | |

### AMEMDED MOTION OF WBY, INC., STEVEN MICHAEL YOUNGELSON AND SURREY WHITE FOR ORDER RESPECTING DEBTOR'S FUNDING OF RESERVE ACCOUNT

WBY, Inc. ("**Debtor**"), Steven Youngelson ("**Youngelson**"), and Surrey White ("**White**" and, collectively with Youngelson, "**Equity Holders**" and, collectively with Debtor, "**Movants**"), by and through their undersigned counsel, hereby amends their "Motion of WBY, Inc., Steven Youngelson and Surrey White for Order Respecting Debtor's Funding of Reserve Account" [Doc. #655] (the "**Motion**"), as follows:

1. Bankruptcy Code Section 105(a) provides this Court with the ability to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions this title." *Id*. at § 105(a). This Court has jurisdiction to review, interpret, and enforce its prior orders, including the Confirmation Order. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 379-80, 114 S.Ct. 1673, 128 L. Ed. 2d 391 (1994) (court has ancillary power to vindicate its authority and effectuate its decrees); *North American Car Corp. v. Peerless Weighing & Vending Machine Corp.,* 143 F.2d 938, 940 (2d Cir. 1944) ("We have, therefore, pointed out the existence of such complementary and auxiliary jurisdiction of the court to protect its original confirmation decree, prevent interferences with the execution of the plan, and otherwise aid in its operation."); *In re Greenley Energy Holdings of Pennsylvania, Inc.,* 110 B.R. 173, 184 (Bankr.E.D.Pa.1990) (court has post-confirmation jurisdiction only over those matters whose resolution is necessary for consummation of the plan).

2.	Debtor's First Amended Plan of Reorganization [Doc. #426] (the "**Plan**") provides as follows:

> **4.2. C** *Class C: Allowed claims of unliquidated and disputed Fair Labor Standards Act Claimants*. Claimants asserting Fair Labor Standard Act claims, who have not opted into the Class D settlement of Fair Labor Standard Act claims, will be paid the full amount of their allowed claims as follows:
>
> 1. Objections to each of the claims in this Class have been or will be filed in this Case. The Bankruptcy Court **will enter orders liquidating each of the claims** upon (1) consent by the parties as to amount, (2) mediation of the claims by a bankruptcy judge or (3) after evidentiary hearing (collectively referred to as "Claims Allowance Litigation").
>
> 2. **Orders liquidating claims in this case, pursuant to the preceding paragraph, will be dispositive of the amount of liquidated damages for each such claimant, regardless of the amount asserted in any proofs of claim in this case**.
>
> 3. The Reorganized Debtor will establish a Reserve Account on the Effective Date. The Reserve Account will be funded, on or before the Effective Date, with a $500,000.00 deposit by the Equity Security Holders. The Reorganized Debtor will then deposit **$100,000.00** into the Reserve Account each month after Class D claims have been fully paid or funded **until the Reserve Account contains 110% of the amount of the claims liquidated according to the preceding paragraphs**. The Reorganized Debtor may elect to deposit such funds into the IOLTA (escrow) account of Debtor's Counsel in lieu of opening a new bank account. No withdrawal shall be made from the Reserve Account unless (a) made to holders of Class C claims, (b) as otherwise authorized by order of the Bankruptcy Court, or (3) all Class C claims have been paid or disallowed.
>
> 4. Claimants in this class will continue to have disputed claims until such time that a final determination of whether they are employees or independent contracts has been made in pending litigation in the U.S. District Court, and any appeals from the U.S. District Court, in the manner described in the Disclosure Statement. If a final, non-appealable order finds that some, or all, Class C claimants were independent contractors, the claims of such claimants will be disallowed and those Claimants will be paid nothing. If the Claimants are found to be employees, their claims will be paid in full, with interest thereon at the rate of 3% per annum from the Effective Date of the Plan until the date of payment, from funds in the Reserve Account or by the Equity Security Holders.
>
> . . .
>
> 6. If there are insufficient deposits in the Reserve Account **at the time any allowed, liquidated claims are submitted for payment**, the Equity Security Holders will

    make adequate deposits into the Reserve Account to allow for payment in full of such claims.

    7. In the event there are insufficient deposits in the Reserve Account **at the time any allowed, liquidated claims are submitted for payment**, and should the Equity Security Holders fail to make adequate deposits into the Reserve Account to make payment in full of any such claims, the claimants are authorized to commence an avoidance action in this Court against the Equity Security Holders to recover avoidable preferential transfers under applicable bankruptcy law.

3.    The Order Approving Disclosure Statement and Confirming Chapter 11 Plan [Doc. #428] (the "**Confirmation Order**") amended Plan Paragraph 4.2C, 3, "to provide that the Debtor shall maintain the Reserve Account for Class C claims in an account under the exclusive control of Debtor's Attorney, and that the initial $500,000.00 funding of the Reserve Account shall be made within 14 days from the entry of this Order; **otherwise the provisions of Paragraph 3 remain in effect** . . ;".

4.    The Confirmation Order amended Plan Paragraph 4.2C, 7, as follows:

    In the event there are insufficient deposits in the Reserve Account **at the time any allowed, liquidated claims are submitted for paymen**t, and the Equity Security Holders fail to make adequate deposits into the Reserve Account to make payment in full of any such claims, each creditor is authorized to commence a Recovery Action against the Equity Security Holders to recover (a) any avoidable preferential payments under applicable bankruptcy law, (b) any fraudulent conveyances or transfers under applicable laws of the United States (without limitation the U.S. Bankruptcy Code) and the State of Georgia and any other court of competent jurisdiction, (c) any distributions to shareholders recoverable under applicable Georgia law, and (d) a claim against Debtor's Equity Security Holders based upon their joint and several obligations and commitments to fund the Class C Claims and Reserve Account as provided for under the Plan (collectively or separately, each an "Recovery Action");

5.    The Equity Security Holders paid the $500,000 into the Reserve Account.

6.    By the express terms of the Plan, as modified by the Confirmation Order, Debtor is not required to fund the Reserve Account beyond the initial $500,000.00 deposit, unless and until any Class C Claims are *liquidated* by order of this Court (or, presumably, by order of the District Court as recognized by this Court).

7. Upon the liquidation of any Class C Claims by appropriate court order, Debtor's obligation to fund the Reserve Account beyond the initial $500,000.00 deposit is limited to 110% of the liquidated amount of only those Class C Claims that have, in fact, been liquidated.

8. This Court has not entered any orders liquidating Class C claims, as such orders are expressly provided for in Plan Paragraph 4.2C, 1, or referred to in Plan Paragraphs 4.2C, 2 and 3.

9. Per the express terms of the Plan, as amended by the Confirmation Order, Debtor presently is under no obligation to further fund the Reserve Account.

10. Debtor nevertheless has funded the Reserve Account by depositing $100,000.00 into the Reserve Account each month through June 2019.

11. The balance on deposit in the Reserve Account presently is $1,625,451.27.

12. This amount represents 110% of potential liquidated claims totaling $1,477,682.97.

13. At the end of April/early May 2019, and at Movants' request, the Court conducted a trial to estimate the amount of all potential Class C Claims. Counsel for Movants and the Class C Claimants have exchanged information following the trial, and the Court has scheduled a final hearing for August 28, 2019.

14. Movants respectfully move the Court for the entry of an order providing clarity of these issues and confirming that Debtor is not obligated to further fund the Reserve Account, unless and until Class C Claims, as estimated by the Court following the August 28, 2019 hearing, are determined to exceed $1,477,482.97.

15. Based on the evidence presented at and information received from the Class C Claimants' counsel following the April/May 2019 trial, Debtor maintains that the maximum, allowable amount of all Class C Claims is between $134,060.00 and $551,984.00 – nowhere near the amounts already set aside for the Class C Claimants in Debtor's Escrow Account.

16.  On the high end, the maximum recoverable amount of $551,984.00 represents <u>three years, liquidated</u> FLSA damages for all Class C Claimants, including:

(i) All minimum wage damages for <u>recorded</u> hours and DJ Tip-Outs and all estimated house fees for recorded hours for entertainers;

(ii) All <u>estimated</u> minimum wages and Tip-Outs for waitresses based on deposition testimony and pleadings; and

(iii) All <u>estimated</u> wages, DJ Tip-Outs, and house fees for all dates for which the Debtor did not maintain records within the 3-year limitations period, calculated using stipulated averages agreed to by the parties based on each Entertainer Claimant's recorded dates.

17.  However, as this Court is aware, Debtor and Equity Holders have argued against the inclusion of damages for which they do not believe recovery is appropriate under the FLSA, including house fees and DJ Tip-Outs. Additionally, with respect to all Class C Claimants except the two waitress Claimants (Courtney Ellington and Constance Smith), Debtor and Equity Holders have asserted defenses on good faith and willfulness that weigh against the expansion of the limitations period to three years instead of two, and the liquidation of damages. Thus, under the various methods of calculation that the Court choose to use for estimating Class C damages, the total damages amounts would be as follows:

|  | 2 YEARS WAGES ONLY | 2 YEARS WAGES + TIP OUTS + HOUSE FEES | 3 YEARS WAGES ONLY | 3 YEARS WAGES + TIP OUTS + HOUSE FEES |
|---|---|---|---|---|
| **ENTERTAINER (UNLIQUIDATED) + WAITRESS (LIQUIDATED)** | $134,060.00 | $286,383.00 | $189,949.00 | $427,578.00 |
| **ENTERTAINER (LIQUIDATED) + WAITRESS (LIQUIDATED)** | $202,577.00 | $354,900.00 | $314,355.00 | $551,984.00 |

18. Copies of supporting charts for each of the Class C Claimants are attached hereto, including a summary of same, as composite Exhibit A. Debtor previously provided these charts to counsel for the Class C Claimants.

19. Class C Claimants also request that the Court require Debtor to escrow an amount for their estimated attorneys' fees. There are two methods for calculating this set aside: (i) Loadstar; and (ii) Contingent Fee at 35% percent of the total recovery received by the Claimants.

20. Using the Loadstar Method of Calculation, the Claimants' counsel has provided documentation of approximately $476,385.00 in fees, removing entries related to their representation of the Class D Claimants and entries related to litigation of the post-petition Barker Collective Action (related to claims not covered by Ms. Barker's proof of claim) neither of which should be included in this calculation. Debtor and Equity Holders believe this is a generous estimate of the total amount of attorneys' fees recoverable in relation to these claims as this estimate does not include any reductions that they will seek at trial for entries that they believe are excessive or redundant billing by Claimants' counsel, or for entire categories of fees that are not recoverable under the circumstances (*e.g.*, Debtor does not believe that Claimants' bankruptcy counsel's fees are fully recoverable under the FLSA as "prevailing party" attorneys' fees, and have articulated the arguments for why this is the case in their briefing on estimation).

21. Using the Contingent Fee Method of Calculation, Class C Claimants' counsel would be awarded between $46,921.00 and $193,194.00 in attorneys' fees.

22. Thus, the <u>maximum</u> amount that Debtor could possibly be required to set aside as a reserve for the Class C Claimants, including attorneys' fees is either:

> (i.) **$ 819,696.00**: 110% of $745,178.00 [three years, liquidated damages (wages, tip-outs, and house fees) plus attorneys' fees calculated using the Contingent Fee Method of Calculation]; or
>
> (ii) **$1,131,205.00**: 110% of $1,028,369.00 [three years, liquidated damages (wages, tip-outs, and house fees) plus attorneys' fees calculated using the Loadstar Method of Calculation].

23. The **$1,625,451.27** already on deposit in the Reserve Account is more than sufficient to cover that potential liability. Indeed, the amount funded exceeds the amount necessary to pay all Class C Claimants (to the extent allowed) by **$494,245.00**, <u>even using the numbers most favorable to the Claimants</u>.

24. In addition to the existing funds on reserve, Class C Claimants are further protected by the negotiated and agreed terms of the Plan Paragraph 4.2C, 7, as amended by the Confirmation Order, in the unlikely event that the present balance of the Reserve Account is insufficient to pay all liquidated Class C Claims.

25. Requiring Movants to continue funding the Reserve Account at the rate of $100,000.00 beyond the present $1,625,451.27 balance, particularly where the Class C Claims are neither liquidated as provided by the express terms of the Plan nor estimated, imposes an unreasonable and unnecessary burden on Debtor. Moreover, this continued funding is plainly unnecessary pursuant to the terms and conditions of the Plan and Confirmation Order.

26. Despite the plain language of the Plan and Confirmation Order, counsel for Class C Claimants continues to demand that Movants fund the Reserve Account.

27. Given that Class C Claimants continue to demand funding of the Reserve Account even though such funding is not expressly required by the Confirmation Order or Plan, an order of this Court is necessary to forestall continued requests from Class C Claimants.

28. In sum, the Reserve Account, as presently funded, is a sufficient reserve against the potential Class C Claims as anticipated and expressly provided by the confirmed Plan.

WHEREFORE, Movants respectfully request that this Court enter an order:

a. Granting the Motion, as hereby amended;

b. Confirming that Debtor is not obligated to further fund the Reserve Account, unless and until Class C Claims, as estimated by the Court following the August 28, 2019 hearing, are determined to exceed $1,477,482.97, and only to the extent of 110% of the aggregate estimated Class C Claims; and

c. Granting Movants such additional relief as the Court deems appropriate under the circumstances.

This 22nd day of July, 2019.

    TAYLOR ENGLISH DUMA, LLP

    By: */s/ John K. Rezac*
    John K. Rezac
    Georgia Bar No. 601935
    1600 Parkwood Circle, Suite 400
    Atlanta, Georgia  30339
    770-434-6868
    jrezac@taylorenglish.com

    *Attorneys for Debtor WBY, Inc. dba Follies*

and

BRYAN CAVE LEIGHTON PAISNER LLP
Jason J. DeJonker, admitted *pro hac vice*
161 N. Clark Street, Suite 4300
Chicago, Illinois 60601
Telephone: (312) 602-5000
Facsimile: (312) 602-5050
jason.dejonker@bclplaw.com

*Attorneys for Steven Youngelson and Surrey White*

## CERTIFICATE OF SERVICE

This is to certify that on this date, I served a true and correct copy of the foregoing AMENDED MOTION OF WBY, INC., STEVEN MICHAEL YOUNGELSON AND SURREY WHITE FOR ORDER RESPECTING DEBTOR'S FUNDING OF RESERVE ACCOUNT via electronic mail as follows:

Leon S. Jones
Jones & Walden, LLC
21 Eighth Street, NE
Atlanta, GA 30309
ljones@joneswalden.com

Ainsworth G. Dudley
4200 Northside Parkway
Atlanta, GA 30327
adudleylaw@gmail.com

Thomas Wayne Dworschak
Office of the U. S. Trustee
Room 362
75 Ted Turner Drive, SW
Atlanta, GA 30303
thomas.w.dworschak@usdoj.gov

This 22nd day of July, 2019.

TAYLOR ENGLISH DUMA LLP

*s/ John K. Rezac*
JOHN K. REZAC
Georgia Bar No. 601935