**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **WBY, INC. dba FOLLIES,** | ) | **Case No. 16-52291-JRS** |
| | ) | |
| Debtor. | ) | |

**MOTION TO QUASH SUBPOENAS SERVED UPON DEFENDANTS' ATTORNEYS
AND MOTION FOR PROTECTIVE ORDER**

Pursuant to FRCP 45(d)(iii) and other applicable law, Debtor, WBY, Inc. ("WBY" or "Debtor"), Steven Youngelson ("Youngelson"), and Surrey White ("White" and, collectively with Youngelson, "Equity Holders" and, collectively with Debtor, "Movants"), hereby move to quash in their entirety the subpoenas recently served by certain plaintiffs in ongoing FLSA litigation against WBY ("Creditors") upon WBY's labor and employment litigation counsel, Erica V. Mason, Esq. ("Attorney Mason"), and her former law firm Constangy, Brooks, Smith & Prophete, LLP ("CBSP"), because the entire subject matter sought by these subpoenas constitutes attorney-client privileged information that is protected from discovery, and for a protective order precluding the Creditors from further pursuing the testimony and documents sought therein. See Exhibit 1, Attorney Mason Subpoena and Exhibit 2, CBSP Subpoena (collectively, the "Subpoenas").

Counsel for Debtor has attempted to confer in good faith with counsel for the Creditors on this issue to no avail. See Exhibit 3 (July 8-28, 2019 Email Correspondence between Frank Beltran (ethics/malpractice counsel for WBY), Attorney Mason,[1] and the Dudley Creditor's counsel). As

---

[1] NOTE: Attorney Mason notified Mr. Dudley and Mr. Jones on July 1, 2019 that she had moved firms to Akerman, LLP as well as her new contact information. Nonetheless, Mr. Dudley and Mr. Jones continued to send emails regarding the subpoenas at issue to her old CBSP email address. Attorney Mason never received these emails and only knows about them *vis a vis* her review of the attachments to this Motion which were provided to her for her review before this filing. Thus,

shown therein, the Creditors have been unable to point to any legal authority for their attempts to seek post-litigation FLSA correspondence or testimony between Debtor and its labor & employment counsel, and have not offered any compelling reason to justify intruding on WBY's privileges.

Furthermore, as shown below, it is apparent the Creditors have decided to pursue the production of attorney work product and attorney-client privileged information not only, and not merely, for the improper purpose of intruding upon WBY's attorney-client privileged communications with its litigation counsel. **Instead, the Creditors have made clear that once they obtain Attorney Mason's testimony, they will then move to disqualify her from representing WBY going forward in any of the ongoing FLSA cases it is a part of at this time, based upon the pretext that she is somehow a necessary fact witness. If Creditors succeed in this ploy they will unduly prejudice WBY by depriving it of its counsel of choice – the labor & employment litigation counsel that has defended them in this and other related litigation since April 2015.** Accordingly, Debtor respectfully requests that this Court quash the subject Subpoenas in order to preserve Defendants' right to counsel and its right to maintain the confidentiality of its attorney-client privileged communications with its labor & employment litigation counsel.

**The Subpoenas at Issue**

On short notice, Creditors served CBSP and Attorney Mason, an attorney formerly with CBSP who is currently representing WBY as its counsel of record in this and other litigation, with

---

any email which indicates that Attorney Mason was a recipient of an email in Exhibit 3 is incorrect. All of the emails in Exhibit 3 were addressed to her old firm email address, not her new firm email address; and the only email in Exhibit 3 to which she was a party is the email that she sent on July 28, 2019 regarding her continued position on these subpoenas.

Subpoenas commanding them attend depositions on Monday, July 29, 2019. Attached to Exhibit 2 (the CBSP Subpoena), is an "Exhibit A" referencing the scope of intended examination. All of the topics listed in that Exhibit A seek to inquire about confidential communications between WBY and its current attorneys representing it in the ongoing litigation matters regarding subject matter pertaining to the litigation.

The Subpoena that is Exhibit 1 hereto also attaches an "Exhibit B" thereto, which is a list of documents sought to be produced. These requested documents consist of written communications between client and counsel regarding the litigation and documents shared among them as part of those communications. All of these document categories seek documents protected from discovery under the attorney-client privilege; and the majority of the categories listed therein seek documents that are confidential attorney work product and/or opinion work product.

With respect to the CBSP Subpoena, neither of the Partners who served as lead counsel in this matter work at CBSP, thus, CBSP cannot comply with this subpoena. Attorney Tamika Nordstrom, lead counsel in the first FLSA matter (Journigan et al. v. WBY, Inc.) from approximately April 2015 through May 2019, left CBSP in approximately May 2018 to work at the Taylor English law firm; and transitioned into an in-house attorney position with a corporation in approximately May 2019 and is no longer an attorney of record in any of the WBY cases. Attorney Mason transitioned to the Akerman law firm on July 1, 2019 and the WBY files were transferred to her at her new firm.

Moreover, as demonstrated on the face of the CBSP and Mason Subpoenas, all of the discovery sought in both subpoenas improperly seeks to violate the attorney-client privilege and/or work product doctrine. The Court should therefore not allow the requested discovery to take place and should quash the Subpoenas in their entirety.

**Facts Pertinent to this Motion**

Creditors in this action are entertainers and wait staff. WBY operates an adult entertainment establishment doing business as The Follies, which provided Creditors with a forum at which they were permitted to ply their trade – notably, a forum at which the patrons of the establishment paid the Creditors *directly* for their services, rather than paying the establishment. Despite the fact that Creditors derived their income from the patrons of The Follies, and not from WBY, and despite the fact that Creditors were not required to pay any portion of the money they earned into WBY's coffers, Creditors have alleged in this action and in various lawsuits and arbitrations that they were actually employees of WBY, and that WBY misclassified them by designating them as independent contractors and not paying them minimum wage.

Prior to any of the Creditors bringing claims that they had been misclassified as independent contractors, WBY sought legal advice from the employment lawyers at Ford & Harrison regarding its arrangement with the entertainers who worked at their establishment starting in approximately September 2012.  Ford & Harrison also served as WBY's defense counsel in the FLSA cases filed against WBY starting on March 28, 2014, but was later replaced with Attorneys Nordstrom and Mason at CBSP. Despite reviewing the very policies about which the Plaintiff-entertainers now complain, there are no written records showing that Ford & Harrison's attorneys ever advised WBY that their employment classification of the entertainers violated federal employment laws, or that they ever advised WBY to change its policies or practices with respect to independent contractor classification prior to the lawsuits filed in March 2014. WBY therefore relied upon this legal advice from Ford & Harrison in maintaining the classification regarding which the Creditors now take issue in all of the related ongoing litigation. Therefore, one of the defenses that Defendants have raised in the litigation is that they relied in good faith upon their

belief that their policies did not contradict the law as they understood it at the time, and this belief was based in part upon the advice of counsel they received from their previous attorneys at Ford & Harrison prior to any complaint being filed as well as Attorney Cary Wiggins, who has also provided deposition testimony regarding pre-litigation advise given to WBY regarding independent contractor classification, and who continues to represent WBY after this litigation was filed on various matters.

Because this advice of counsel "good faith" defense is at issue in this litigation, WBY has not raised any objection to Creditors' discovery of facts and documents regarding WBY's communications with, and the advice it received from, Ford & Harrison or Attorney Wiggins <u>prior to the initiation of the litigation</u> and waived the attorney-client privilege concerning the pre-litigation legal advice that is actually at issue in this lawsuit. During the recent depositions of Ford & Harrison attorney Bennett Alsher and Attorney Cary Wiggins, neither the Creditors' counsel nor Claimant Brezzy Hursts' counsel sought testimony from Ford & Harrison or Attorney Wiggins regarding post-litigation advice regarding FLSA classifications. In fact, they stipulated that those depositions would be limited to pre-litigation advice only.

Nonetheless, the Creditors now want to intrude into attorney-client privileged confidential communications with Attorney Mason, *current lead counsel in all FLSA cases,* despite the fact that all such communications occurred exclusively during the course of this litigation and in the context of ongoing litigation.

### The Creditors' Stated Rationale

Of course, requiring an opposing party's current litigation lawyer to give deposition testimony or produce attorney-client privileged communications is highly unusual and improper on its face unless the client of the attorney in question has voluntarily agreed to waive the privilege

or some special circumstances exist that necessitate that an exception be made to the rule that attorney-client confidences be held inviolate. At the time when the Creditors' counsel indicated that they not only wanted to depose Attorney Mason regarding post-litigation advice, they also wanted to force her recusal because she testified, Attorney Mason asked the Creditors' counsel to provide cites for any FLSA cases in which the court allowed discovery inquiries into post-litigation advice where the good faith affirmative defense was raised. In his response, he offered a number of cases explaining that courts have allowed depositions of FLSA defense counsel regarding pre-litigation advice, but none involving post-litigation advice. <u>See</u> Exhibit 4, June 4-18, 2019 Correspondence between Attorney Mason and the Creditors' counsel.

As reflected in those emails, the Creditors ignore the obvious distinction between <u>pre-litigation advice</u> regarding business decisions that later became the subject of litigation and advice given by litigation counsel in the course of <u>already-ongoing litigation</u>. The Creditors' counsel remonstrated that it would be "fundamentally unfair" for WBY to "rely on some advice but conceal other advice." <u>See</u> Exhibit 4, at p. 2 (June 5, 2019 Email from Ainsworth Dudley). According to the Creditors' counsel, virtually nothing WBY has discussed with its litigation counsel about independent contractor classification or the related litigation should remain protected. Specifically, the Creditors' stated position is as follows:

> [W]e believe the scope of the waiver would extend to all attorney-client communications for the period of time your firm began representing Follies through the date of the deposition, and would include all attorney-client communications involving at least the following subjects: classification of entertainers, any advice regarding the elements of the economic realities test, the payment/non-payment of wages, the tip credit provisions of the FLSA, the payment of fees and tip-outs by entertainers, the characterization of dance fees as service charges, other advice about service charges, any exemption, the grounds for and likelihood of success on the appeal/prospective appeal of the *Hurst* partial summary judgment order, the use of arbitration and independent contractor agreements and the record keeping requirements of the FLSA.

<u>See</u> Exhibit 4, at pp. 2-3 (June 5, 2019 Email from Ainsworth Dudley).

In support of this outrageous overreach, the Creditors' counsel presented the even-more astounding argument that "[g]iven that Barker [who is one of the Plaintiff-entertainers] continues to work for Follies, we believe the waiver should extend through the present." <u>See</u> Exhibit 4, at pp. 3-4 (June 4, 2019 Email from Ainsworth Dudley). Taken to its rational conclusion, if the Court were to accept the Creditors' assertion, it would mean that WBY would *never again* be able to engage in confidential attorney-client discussions with *any* lawyer regarding the subject matter of the ongoing litigation so long as Ms. Baker continues to ply her trade at The Follies.

### The Creditors' Proposed Discovery is a Transparent Ploy to Deprive WBY of Its Right to be Represented by Counsel.

Not only do the Creditors' counsel assert that all of WBY's attorney-client discussions regarding the conduct of the ongoing litigation – from the filing of the original complaint, continuing to the present time, and extending henceforth so long as Ms. Baker continues to entertain patrons at The Follies – should be freely open to discovery; Creditors apparently also believe that WBY should not be able to be represented by counsel *at all* so long as WBY continues to assert legal arguments with which Creditors disagree.

In response to the Creditors' arguments, Defendants' current litigation counsel, Attorney Mason, expressed concerns that, even aside with the other problems with the Creditors' request to depose her, the requested deposition would work an unbearable hardship upon Defendants because it could lead to her disqualification as counsel for Defendants under <u>Georgia Rule of Professional</u>

Conduct 3.7(a), which generally prohibits a Georgia lawyer from acting as an advocate in a legal proceeding in which the lawyer must also appear as a witness.[2]

In response to this concern, the Creditors' counsel conceded that he did, in fact, intend to use the deposition testimony he sought to compel from Attorney Mason as a pretext to also disqualify her from continuing to represent Defendants:

> We sympathize with you given the position your clients have placed you in by continuing to assert what we believe are defenses (the good faith defense/no willful violation) lacking legal or factual support, and by specifically placing your legal advice (and others) at issue in this case by specifically asserting legal advice as part of the good faith defense. As you know, these are important issues affecting over 50% of Plaintiffs' claims in all of the actions.
>
> We agree with you that you are a material witness in all of the cases, and it will be a violation of the Georgia State Bar ethical rules for you to continue to represent your clients and testify in those cases. Additionally, you also may have a conflict with your clients with respect to your testimony which would serve as another ground for disqualification. Plaintiffs/Claimants also may have a right to disqualify

---

[2] **GA RULE OF PROFESSIONAL CONDUCT 3.7: LAWYER AS WITNESS**

    a.  A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>    1. the testimony relates to an uncontested issue;
>    2. the testimony relates to the nature and value of legal services rendered in the case; or
>    3. disqualification of the lawyer would work substantial hardship on the client.

The maximum penalty for a violation of this Rule is a public reprimand.

Comment

[4] Apart from these two exceptions, paragraph (a)(3) recognizes that a balancing is required between the interests of the client and those of the opposing party. Whether the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony, and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified, due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness. The principle of imputed disqualification stated in Rule 1.10: Imputed Disqualification has no application to this aspect of the problem.

you given your status as a witness with knowledge of the facts relating to the good faith defense and the applicable statute of limitations. **In sum, maybe you should voluntarily withdraw**.

See Exhibit 5 (June 20, 2019 Email from Ainsworth Dudley) (**emphasis added**).

Contrary to the Creditors' counsels' statement, Attorney Mason has at no point stated any belief that she is in any way a "material witness in this case," and WBY has no intention of offering her as a witness in this, or any other, litigation. Furthermore, given that she was not hired until litigation was already underway, Attorney Mason does not have any direct personal knowledge of the thought process behind any of the pre-litigation business decisions that WBY made out of which the Creditors' claims arose.

In addition to seeking to deprive WBY of the current counsel of its choice, taken to its logical conclusion the Creditors' position, as expressed in the above-quoted email, is that so long as WBY persists in "continuing to assert" a good faith defense that Creditors "believe" to be "lacking legal or factual support," then WBY will not be able to retain *any* lawyer to continue representing it in the litigation. If Attorney Mason were to "voluntarily withdraw" as the Creditors' counsel requests, WBY could hire a new lawyer, but if that lawyer continued to assert the same defenses, then he or she could be deposed and then disqualified in turn. This would be an absurd result.

### Memorandum of Law

The Creditors' stated rationale for seeking to violate WBY's attorney-client privilege with the lawyers representing it in this and other litigation matters is not only logically nonsensical, but also contrary to law. As the United States Supreme Court has held, the attorney-client privilege is sacred and its preservation is necessary in order for our justice system to function properly:

The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law. 8 J. Wigmore, Evidence § 2290

(McNaughton rev. 1961). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

Upjohn Co. v. U.S., 449 U.S. 383, 388 (1981). A party's right to advice of counsel is not to be taken lightly, and this District has previously held that a baseless attempt by a party to deprive an opposing party of its right to the counsel of its choice may subject the offending party to Rule 11 sanctions. Doe v. Fulton-Dekalb Hospital Authority, 2006 WL 2990442 (N.D. Ga. 2006).

In support of their insistence that the attorney-client privilege between WBY and its current litigation counsel should be disregarded, Creditors have argued that WBY has "impliedly waived" the attorney-client privilege regarding the litigation advice it received from Attorney Mason by placing "at issue" its good faith in making the post-litigation decisions that underlie the Creditors' claims. However, this too, is logically impossible as those decisions had been made long before Attorney Mason began representing WBY.

By email, Creditors have cited to four cases that they claim support their position – Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1419 (11th Cir. 1994); U.S. v. Bilzerian, 926 F.2d 1285, 1292 (2nd Cir. 1991); Scott v. Chipotle Mexican Grill, Inc., 67 F.Supp. 3d 607 (S.D.N.Y. 2015); Edwards v. KB Home, No. 3:11-CV-0240 (S.D. Tx. 2015) – all of which are inapposite for reasons described further below. There is no authority to support the Creditors' argument that WBY has "impliedly waived" the attorney-client privilege between itself and its current litigation counsel, Attorney Mason, who was hired only after litigation had begun.

*The concept of "implied waiver" of the attorney-client privilege*

"The attorney-client privilege belongs to the client and the privilege is solely the client's to waive." See e.g. Camacho v. Nationwide Mut. Ins. Co., 287 F.R.D. 688, 692 (N.D. Ga. 2012).

The concept of an "implied waiver" of the attorney-client privilege as to otherwise-privileged information or materials only applies in certain limited situations. For example, in a legal malpractice case, the plaintiff-client impliedly waives privilege regarding his communications with the attorney against whom he brings the claim. See e.g. Daugherty v. Cobb, 189 Ga. 113, 5 S.E.2d 352 (1939). The attorney-client privilege may also be impliedly waived in other situations in which the client may attempt to use the privilege as both a "sword and a shield" simultaneously. See e.g. U.S. v. Bilzerian, 926 F.2d 1285, 1292 (2nd Cir. 1991)(white collar criminal's testimony that he thought his actions were not illegal could potentially open door for cross-examination regarding legal advice he received at the time he committed the crimes) (emphasis added) (citing In Re Von Bulow, 828 F.2d 94, 103 (2nd Cir. 1987)).

Although a question of implied waiver will depend on the facts of a particular case, this Circuit and District have set forth a very clear test to determine when the client has, or has not, impliedly waived privilege as a result of the client's own affirmative actions.

### *The Christenbury Test*

Consistent with the majority of jurisdictions around the country, the Northern District of Georgia has articulated a three-prong test for determining when implied waiver has occurred:

"(1) the party asserting the privilege affirmatively acted in a manner which resulted in the assertion of the privilege;

(2) through the affirmative act, that party placed the protected information at issue by making it relevant to the case; and

(3) application of the privilege would deny the opposing party access to information vital to its [claim or] defense."

Christenbury v. Locke, Lord, Bissell & Liddell, 285 F.R.D. 675, 682 (N.D. Ga. 2012). The Eleventh Circuit stated the same rule more simply in Cox v. Administrator U.S. Steel & Carnegie: "the attorney-client privilege is waived when a litigant 'place[s] information protected by it in

issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." 17 F.3d 1386 at 1419 (11th Cir. 1994).

In this case, the three-prong <u>Christenbury</u> test quoted above perfectly demonstrates why WBY's pre-litigation communications with Ford & Harrison should be subject to discovery (as WBY, acting in good faith, stipulated to allow long ago), **but** WBY's post-litigation confidential communications with Ms. Mason absolutely should not be allowed to fall into the Creditors' hands. The post-complaint litigation advice that WBY received from its current litigation lawyer is in no way relevant to the pre-complaint decisions out of which the related lawsuits and arbitrations arose. Under the <u>Christenbury</u> test:

(1) WBY has done nothing to prompt the Creditors' attempt to discover clearly-privileged information and materials from Attorney Mason because WBY does not ever intend to call Attorney Mason as a witness in this case or in any of the related lawsuits or arbitrations;

(2) WBY has not put the protected information at issue because it does not intend to rely upon any legal advice it received from Attorney Mason (who did not even begin to represent WBY until after the litigation began) as part of its good faith defense;

(3) nor would it somehow deprive Creditors of "vital" information for this Court now to deny the Creditors' attempts to steal their opponent's litigation gameplan and then disqualify the lawyer of its choice from continuing to represent it.

*The facts of <u>Christenbury</u> further*
*<u>demonstrate why the Creditors' argument fails.</u>*

<u>Christenbury</u> was a legal malpractice case in which the defendant law firm sought to discover files from another lawyer who represented the client both concurrently with, and subsequent to, the advice given by the defendant law firm that the client alleged to be negligent.

In sum, the court ruled that the client had impliedly waived the privilege as to the concurrent advice given by the other lawyer regarding – and at the time of – the transaction that underlay the claims against the defendant law firm. <u>On the other hand, however, the court ruled that the client had not waived privilege regarding subsequent advice that the other lawyer had given the client regarding other matters.</u>

The plaintiff-client, an investor named Mr. Christenbury, who had been looking to find a financial investment that would receive favorable tax treatment, invested in a financial product offered by Fidelity Insurance Company (Fidelity). He did so based on legal advice from two different law firms that he hired, Locke Lord, Bissell, Liddell, LLP (Lock)(the eventual defendant law firm) and a Texas attorney named Terry Lustig (Lustig)(the "other lawyer" referenced above). Lustig had first advised Christenbury regarding the existence of the Fidelity product. Then, on Christenbury's behalf, Lustig obtained a tax opinion letter from Locke stating that the transaction would qualify for a federal income tax deduction and would not constitute a tax shelter. <u>Christenbury</u>, <u>supra</u>, 285 F.R.D. at 678. Locke issued its opinion letter based on information obtained from Fidelity.[3] <u>Id</u>.

Christenbury relied on Locke's tax opinion letter and purchased the financial product from Fidelity. Locke's opinion regarding the tax treatment of the financial product, however, turned out to be false. Fidelity later offered to refund Christenbury's investment minus certain contractually-established charges and fees, but Christenbury rejected that offer. <u>Id</u>. at 679. Instead, Christenbury brought a legal malpractice claim against Locke in the United States District Court for the Northern

---

[3] Locke also simultaneously represented Fidelity. Locke had a conflict waiver in place with Christenbury concerning the firm's simultaneous representation of Fidelity, but Christenbury later alleged that the conflict waiver letter misstated the nature and scope of this representation by falsely asserting that Locke's representation of Fidelity was "unrelated" to the matter for which Christenbury had hired Locke. <u>Id</u>.

District of Georgia, and also brought separate legal actions against Lustig and Fidelity in other jurisdictions. Id.

In response to Christenbury's claims against it, Locke asserted that Christenbury "decided to participate in the [subject] transaction based not just (or not even at all) on [Locke's] advice, but instead in whole or in part on advice by Lustig." Id. Locke also asserted that Christenbury subsequently failed to mitigate his damages by rejecting Fidelity's early settlement offer. During discovery, Locke moved to compel two distinct categories of otherwise privileged documents:

> (1) "communications with Lustig relating to the decision to participate in the [investment offered through Fidelity]," and
> (2) "post-transaction communications with Lustig [and other lawyers and accountants] relating to tax filings [and Christenbury's] decision to reject Fidelity's offer to return the investment, and other efforts to 'unwind' the deal."

> Id.

Locke argued that by filing suit, Christenbury impliedly waived privilege as to advice he received from other lawyers regarding (a) his decision to buy the Fidelity product in the first place, and (b) his rejection of Fidelity's early settlement offer. Id.

Applying the test stated above, the Court found that privilege had been waived *only* as to the first category of otherwise privileged documents, and *not* as to the second. As to the first category, Christenbury was suing both Locke and Lustig for the same malpractice stemming from the same pre-dispute legal advice regarding the underlying transaction. Therefore, Christenbury had affirmatively put this pre-dispute advice concerning the transaction "at issue" such that denying Locke these documents would deprive it of "vital discovery." Id. at 684.

But as to the second category of discovery sought, the *post*-transaction documents, the court reached the opposite conclusion. Id. at 684-686 (Division 3 of the Opinion). The court noted that what Locke was mainly seeking were attorney-client communications between Christenbury

and his other attorney regarding his decision to reject Fidelity's early settlement offer, which Locke characterized as a failure to mitigate damages. The court held that the "implied waiver doctrine" only covers "advice plaintiff received from other lawyers on the same subject matter and during the same time period" as the subject matter underlying the complaint. Id. at 684. The Georgia Court of Appeals recently ruled similarly in the case of Moody v. Hill, Kertscher & Wharton, LLP, 346 Ga. App. 129, 813 S.E.2d 790 (2018)(implied waiver did not apply where "appellants actually engaged Holland & Knight *after* the legal advice and serviced provided by the appellees that constitute the subject of appellants' complaint against the appellees")(emphasis in the original).

In this case, WBY did not even hire Attorney Mason or her former law firm until *after* litigation was well underway. Furthermore, as with the implied waiver argument rejected by the Court in Christenbury, the third prong of the test cannot be satisfied. In Christenbury, Locke could not satisfy the third prong of the test because it "fail[ed] to show that these documents are vital to their defense." Id. at 686. Locke already had evidence of the "core fact" that Christenbury rejected Fidelity's settlement offer. Id. There was no reason why Locke also needed Christenbury's confidential attorney-client discussions about the rejected settlement in order to present its mitigation argument. Id. Similarly in this case, there is absolutely no reason why Creditors need to discover Defendants' attorney-client privileged discussions regarding their defenses in this litigation in order to pursue their claims. Creditors may argue that even as this litigation has proceeded over the past five years, WBY still has not changed the policies out of which this litigation arose, but this fact is immaterial. As it has asserted in the ongoing litigation, WBY continues to believe that it classified Creditors correctly and that it did nothing wrong.

Assuming *arguendo* that WBY's classification of the entertainers appearing at The Follies was not compliant with the FLSA, WBY acted upon a good faith belief as to the state of the law

15

based in part on the advice that it received from Ford & Harrison and Attorney Cary Wiggins before this litigation was ever filed, or even threatened. Even if the fact that The Follies has not changed its policies in the five years since it was sued were relevant to the validity of its defense based on its good faith reliance on the pre-dispute advice of counsel given by Ford & Harrison Attorney Cary Wiggins (which it is not), Creditors are certainly aware of the "core fact" that The Follies still does not classify the entertainers as employees. Indeed, "[g]iven that Plaintiff Barker continues to work for Follies," as the Creditors' counsel points out, she should be especially aware of this core fact (and apparently she has no problem with being allowed to keep the money that the patrons pay to her directly rather than submitting to a typical "employee" role where she would turn this money over to her employer, who would then pay her a wage at the end of the month after pocketing a profit).

### _The cases cited by Creditors do not support their position_

Three of the four cases the Creditors' counsel cited in support of their subpoena requests, are not in this circuit and do not support the Creditors' "implied waiver" argument:

Bilzerian, supra, is a criminal case in which the accused defendant sought to offer testimony at trial that he believed that his actions were legal at the time he undertook them. 926 F.2d 1285 (2nd Cir. 1991). The court held that he was welcome to do so, but doing so could potentially open the door to cross examination regarding his communications with his then-attorneys regarding the state of the law at that time. Id. at 1291-1293. Based on this ruling _in limine_, at trial the defendant chose not to testify to his good faith belief as to the state of the law at the time of his actions, and the trial court's ruling was later affirmed. Id. Notably, however, there was no assertion by the prosecution in Bilzerian that, had the

criminal defendant testified as to his good faith belief regarding the law, which was informed by his communications with the lawyers who represented him at the time of his actions, he would have also thereby waived privilege as to the criminal defense lawyer sitting with him at his counsel table at the trial.  Here, WBY has already stipulated that Creditors may discover WBY's otherwise-protected communications with Ford & Harrison. There is no reason why "the door has been opened" as to litigation advice secured from WBY's current litigation counsel.

The Creditors also cited Edwards v. KB Home, 2015 WL 4430998 (S.D. Tex. 2015) and Scott v. Chipotle, 67 F.Supp.3d 607 (S.D.N.Y. 2014). Neither of these cases, however, involved an attempt to discover a party's attorney-client communications with its current litigation counsel. Instead, both Edwards and Scott involved pre-litigation advice regarding decisions that predated the filing of the complaint. Neither these cases nor any other law supports the brazen violation of the attorney-client privilege now being attempted by Creditors.

Of the cases cited by the Creditors' counsel in his email as support for his position, only Cox v. Administrator U.S. Steel & Carnegie, is from this Circuit. 17 F.3d 1386, 1419 (11th Cir. 1994).  However Cox undermines the Creditors' argument rather than supporting it as it relates to post-litigation communications and advice.

First, the Eleventh Circuit largely rejected the plaintiff's arguments for obtaining discovery into attorney-client privileged communications. Second, where they did allow discovery, it was limited to pre-litigation communications and documents, and the Court only allowed depositions on written question of the company's attorneys, not live deposition testimony.

Last, the Court of Appeals rejected the arguments regarding implied waivers based on prior trial testimony by the litigants or their counsel and issued strong language describing the near absolute immunity that attorney opinion work product should be afforded.

In that case, union members of the US Steel Union sued both the union and their employer alleging that their union negotiators had agreed to concessions in a collective bargaining agreement in exchange secret, "under the table" payments to the union negotiators at the expense of the other members. In the civil fraud trial filed against the union and the employer, union members sought discovery of attorney-client privileged communications between the union negotiators and the union's lawyers after the union lawyers testified on behalf of the negotiators during the criminal fraud trial.

The Court rejected the argument that the union lawyers' testimony in the criminal trial created an implied waiver of any privilege protecting communications between the union negotiator and the union's lawyers, focusing instead on the lack of prejudice to the plaintiffs caused by the criminal trial testimony:

> Because the plaintiffs have failed to explain how they have been prejudiced by any of the actions taken by the Union's lawyers in the criminal case, we decline to find that the Union has impliedly waived its privilege… the 'Court cannot justify finding a waiver of privileged information merely to provide the opposing party information helpful to its cross examination or because information is relevant'…

> Id. at 1418 (quoting Remington Arms Co. v. Liberty Mutual Ins. Co., 142 F.R.D. 408, 415 (D.Del. 1992)).

Although Cox predates Christenbury, this holding essentially applies "prong 3" of the Christenbury test – waiver will not be found unless upholding the privilege would "deny the opposing party access to information vital to its defense [or claims]."

The same analysis applies to this case: just because the Creditors' counsel would like to see WBY's gameplan, the Creditors will not be "prejudiced" in any way by not being able to see post-litigation filing attorney-client communications between WBY and its litigation counsel, all of which occurred long after the alleged misclassification occurred.  WBY has made clear that it will not seek to rely on the testimony of its owners or its counsel regarding post-litigation advice as the basis of its good faith defense, or defense to any allegation of willfulness in this estimation trial. Instead, it will only rely on the communications it had with Ford & Harrison and Cary Wiggins for the purposes of the good faith/willfulness defenses.

Moreover, even where the Court found a limited waiver (in the context of communications between the employer and its attorneys it was limited to pre-litigation communications and the depositions of the company's attorney were limited to deposition on written question under FRCP 31.

### Subpoena Exhibit B Seeks Attorney Work Product and Opinion Work Product Which Enjoy Nearly Absolute Immunity

Material that reflects an attorney's mental impressions, conclusions, opinions, or legal theories, is referred to as 'opinion work product.' Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney. In Upjohn, the Supreme Court made clear that an attorney's notes and memoranda of a witness's oral statements is considered to be opinion work product. As Rule 26(b)(3) makes apparent, opinion work product can not be discovered upon a showing of substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship. Instead, opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.

Cox, supra, (internal quotations omitted) (citing In re Murphy, 560 F.2d 326, 336 (8th Cir. 1977); Hickman, 329 U.S. at 510-11, 67 S.Ct. at 393; Upjohn Co. v. United States, 449 U.S. 383, 399-400, 101 S.Ct. 677, 687-88 (1981); National Union Fire Ins. Co. v. Murray

Sheet Metal Co., Inc., 967 F.2d 980, 983 (4th Cir. 1992); In re Sealed Case, 676 F.2d 793, 809-10 (D.C.Cir. 1982)).

The Dudley Creditor's attempts to depose WBY's counsel is an improper end-run to gain a strategic advantage over WBY by forcing its litigation counsel to withdraw prematurely from this case. Similarly, their attempts to seek privileged written communications that also contain attorney work product, is also an improper attempt to gain advantage over WBY in both the district court and bankruptcy litigation that have nothing to do with the good faith defense.

Otherwise, what basis could the Class C Creditors have to seek written communication with WBY about such a broad array of topics, including "Communications with [WBY] regarding the reason(s) for or purpose of the Debtor filing a bankruptcy petition"? See Exhibit 2, Subpoena Exhibit B, category 12.

### Conclusion

The discovery that Creditors seek is clearly privileged under F.R.E. 501 and other law, and complying with these subpoenas jeopardizes WBY's ability to be represented by its employment litigation counsel of choice. For the purposes of this estimation trial, there simply is no prejudice the Creditors would suffer by not having access to post-litigation attorney-client privileged communications or attorney work product. Even if there were, it certainly would not outweigh the hardship that WBY would suffer by losing its employment counsel.

Movants therefore submit that the Court should GRANT this motion, QUASH the subject Subpoenas in their entirety, and ORDER that WBY be protected from any discovery seeking attorney-client privileged communications or other related documents

or information shared among WBY and Attorney Mason, or her current or former law firms.

WHEREFORE, Movants respectfully request that the Court enter an Order:

a) Granting this motion;

b) Quashing the subject Subpoenas in their entirety;

c) Ordering that WBY be protected from any discovery seeking attorney-client privileged communications or other related documents or information shared among WBY and Attorney Mason, or her current or former law firms; and

d) Granting Movants such additional relief as the Court deems appropriate under the circumstances.

Respectfully submitted, this 29th day of July, 2019.

TAYLOR ENGLISH DUMA, LLP


By:     */s/ John K. Rezac*
John K. Rezac
Georgia Bar No. 601935
1600 Parkwood Circle, Suite 400
Atlanta, Georgia  30339
770-434-6868
jrezac@taylorenglish.com

*Attorneys for Debtor WBY, Inc. dba Follies*

and

BRYAN CAVE LEIGHTON PAISNER
LLP
Jason J. DeJonker, admitted *pro hac vice*
161 N. Clark Street, Suite 4300
Chicago, Illinois 60601
Telephone: (312) 602-5000
Facsimile: (312) 602-5050
jason.dejonker@bclplaw.com

*Attorneys for Steven Youngelson and Surrey
White*

## **CERTIFICATE OF SERVICE**

This is to certify that on this date, I served a true and correct copy of the foregoing

MOTION TO QUASH SUBPOENAS SERVED UPON DEFENDANTS' ATTORNEYS AND

MOTION FOR PROTECTIVE ORDER via electronic mail as follows:

Leon S. Jones
Jones & Walden, LLC
21 Eighth Street, NE
Atlanta, GA 30309
ljones@joneswalden.com

Ainsworth G. Dudley
4200 Northside Parkway
Atlanta, GA 30327
adudleylaw@gmail.com

Thomas Wayne Dworschak
Office of the U. S. Trustee
Room 362
75 Ted Turner Drive, SW
Atlanta, GA 30303
thomas.w.dworschak@usdoj.gov

This 29th day of July, 2019.

TAYLOR ENGLISH DUMA LLP

*s/ John K. Rezac*
JOHN K. REZAC
Georgia Bar No. 601935