

**IT IS ORDERED as set forth below:**

**Date: August 5, 2019**

_____
**James R. Sacca**
**U.S. Bankruptcy Court Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| WBY, INC. D/B/A FOLLIES, | ) | Case No. 16-52291-JRS |
| | ) | |
| Debtor. | ) | CONTESTED MATTER |
| _____ | ) | |

### ORDER ON MOTION TO CLARIFY CONFIRMATION ORDER
### OR IN THE ALTERNATIVE TO MODIFY
### <u>CONFIRMED CHAPTER 11 PLAN OF REORGANIZATION</u>

The Court has been asked to either (a) modify Debtor's confirmed Chapter 11 plan to

restore a provision implementing a third-party injunction in favor of the Equity Holders against a

certain class of creditors which had been removed from the plan by the Debtor in response to an

objection from certain creditors or (b) clarify the plan to enforce the third-party injunction in favor

of the Equity Holders against a certain class of creditors because it was allegedly (i) the intention

1

and understanding of the parties that the injunction would apply or (ii) still provided for in the plan even though the Debtor removed the provision from the plan.

This issue was brought before the Court by way of Debtor's "Motion to Clarify Confirmation Order, or in the Alternative to Modify Confirmed Chapter 11 Plan of Reorganization" (the "Motion") [Doc. No. 545]. Steve Youngelson ("Youngelson") and Surrey White ("White," together with Youngelson, the "Equity Holders") filed a "Joinder" to the Debtor's Motion [Doc. No. 547]. The claimants represented by Ainsworth Dudley and Jones and Walden, LLC (collectively, the "Dudley Claimants")[1] filed an objection to the Motion [Doc. No. 555] (the "Objection"). The pleadings are a result of a dispute between the parties as to whether a third-party injunction applies to the Dudley Claimants electing treatment under Class D of the Plan. This matter came before the Court for trial on October 23, 2018 (the "Trial") and post-trial briefing followed. After conducting the Trial and considering all matters of record, the Court will DENY the Motion.

### Factual and Procedural Background

On February 5, 2016 (the "Petition Date"), Debtor WBY. Inc. ("WBY") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code"). Debtor operates a bar, restaurant, and night club with nude entertainment. The Equity Holders each hold 50% of the shares of Debtor. Prior to the Petition Date approximately 70 entertainers represented

---

[1] As discussed further below, the Dudley Claimants are individuals represented by Ainsworth Dudley and Jones and Walden, LLC who chose treatment under Class C or Class D of the Debtor's Chapter 11 Plan. The Class C Dudley Claimants are Mikki Williams, Karenna Van Hook, Jessica Saunders, Hailey Lytle, Grace King, Ebony Yarbrough, Cydney Bell, Courtney Sacdalan, Shanteria Cameron, Toni Davis, Samantha Schaffer, Rodrinna Brooks, Constance Smith, Courtney Ellington, Noelle Greene, and Soraya Barker. The Class D Dudley Claimants are Sheldon Hailey, Ashley Murphy, Ayalla Talley, Ayana Robinson, Calesia Goddard, Christina Charles, Courtney Bradley, Delisha Watkins, Desiree McGowan, Donjanae Grant, Holly Hutsell, Isabel Serrano, Janna Anderson, Jasmine Stewart, Jazzlyn Griffin, Jessica Abraham, Jolene Nyguyn, Kerra McDuffie, Latisha Blake, Latoya Becton, Michaela Harris, Nina Kim, Quina Dopoe, Raquesha McLean, Samantha Glen, Sarah Olshansky, Shannon Jackson, Shante Sylvester, Tiffany Clarke-Murphy, Tonisha Baker, and Victoria Williams.

by Nichols Kaster PLLP and Morris Manning & Martin LLC (the "Kaster Claimants") commenced arbitration proceedings or filed lawsuits against the Debtor alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (the "FLSA") in the United States District Court for the Northern District of Georgia (the "District Court").[2]  The Debtor and its entertainers were parties to arbitration agreements which required the Debtor to pay arbitration fees to the American Arbitration Association, which fees were in the approximate amount of $20,000.00 per arbitration. The potential litigation and arbitration costs – which could be a minimum of $1,400,000 for the arbitration costs alone – caused the Debtor to file for bankruptcy protection. Separately, the law firm of DeLong Caldwell Bridgers & Fitzpatrick, LLC had previously initiated two separate FLSA actions in the District Court on behalf of their clients, Civil Action No. 15-cv-13560, styled as *Hurst v. Youngelson*, et al., filed on October 7, 2015, and Civil Action No. 15-cv-00067, styled as *Hart v. WBY, Inc.* filed on January 8, 2015. The *Hart* matter was resolved by a confidential settlement approved by the District Court prior to the filing of the petition. The *Hurst* matter is in the damages phase in the District Court after the Hon. Michael L. Brown found Ms. Hurst to be an employee of the Debtor on cross motions for summary judgment.  The Dudley Claimants timely filed their proofs of claim but had not initiated suit in the District Court at the time the bankruptcy petition was filed.[3]

On August 22, 2016, the Debtor and some of the Kaster Claimants filed a Joint Motion to Approve Settlement Agreement and Compromise of Claims (the "Motion to Compromise") in the bankruptcy case [Docket No. 119]. The Motion to Compromise included the Settlement Agreement and Compromise of Claims (the "Settlement Agreement") as an exhibit thereto. With

---

[2] Kaster Claimants initiated Civil Action No. 14-cv-913 styled as *Journigan v. WBY, Inc.*, filed on March 28, 2014. In addition, Kaster Claimants Tiara Payne and Tashia Anderson filed arbitration proceedings against Debtor.
[3] Claims 79 through 125, filed on or around September 15, 2016.

3

respect to the individual claimants who agreed to its terms and signed the Settlement Agreement, the proposed settlement basically provided that (a) their claims would be allowed in the amount of their proof of claim, (b) they would be paid 10% of that amount, and (c) they could not pursue any further recovery against the Debtor or Equity Holders.

At the time of the filing of the Motion to Compromise, some Kaster Claimants and none of the Dudley Claimants or Brezzy Hurst had committed to being parties to the Settlement Agreement. In fact, neither Hurst nor the Dudley Claimants had participated in the negotiations that occurred prior to the filing of the Motion to Compromise and the Dudley Claimants filed an objection to it [Docket No. 130].[4]  In their objection, the Dudley Claimants argued that the Settlement Agreement was an attempt to circumvent the requirements of the Code because a plan and disclosure statement had not yet been filed. They also objected to the third-party injunction and the inclusion of both "Settling Creditors" and other FLSA claimants in the same class in any plan that would be filed.

At the hearing on the Motion to Compromise, counsel for the Dudley Claimants informed the Court that his clients' objections had been resolved as follows: (1) the Dudley Claimants would receive limited relief from the automatic stay under an order containing the same language as the Order entered by the Court on May 11, 2016 [Doc. No. 67] which would allow the Dudley Claimants to assert claims under the FLSA against the Debtor in District Court solely for the purpose of making a determination as to their status as employees and whether FLSA violations occurred, (2) the parties would consent to joint deposition tracks for the various cases, (3) Debtor agreed to two classes of FLSA creditors in the Plan, (a) a class of settling claimants and (b) a class

---

[4] Ms. Hurst filed a "Limited Objection" to the Motion to Compromise reserving her rights to object to any future plans filed in the case regardless of whether said plan was consistent with the Settlement Agreement, of which she was not a party [Doc. No. 129].

containing Kaster Claimants who did not sign the Settlement Agreement, Brezzy Hurst and the

Dudley Claimants who would be paid 100% of their allowed claims after determination by the

appropriate court and (4) the Dudley Claimants would have "the right to opt in to take the deal that

the settlement claimants took." [Transcript of September 28, 2016 Hearing, p. 5:22-9:24.]

The parties submitted a Consent Order Granting Motion to Approve Settlement and

Compromise of Claims (the "Settlement Consent Order") on October 7, 2016 [Doc. No. 135].

Section 5 of the Settlement Consent Order states:

> In any Plan of Reorganization filed in this Case, Debtor shall designate a class of Fair Labor Standards Act claimants which shall include the Objecting Parties, and may also include Settling Creditors that do not become Opt-In Plaintiffs, and which class shall be separate from the class consisting of the Opt-In Plaintiffs. [Doc. No. 135, p. 4].

Section 6 of the Settlement Consent Order states, in part:

> In any Plan of Reorganization filed by Debtor, the Creditors in the class containing the Objecting Parties shall have the right to elect to join the class of Settling Creditors and obtain the same payment and treatment of their claims as provided for in the Plan class containing the class of Settling Creditors. [Doc. No. 135, p. 5].

The Settlement Agreement states:

> Opt-In Plaintiffs are "Collective Action Plaintiffs who file releases to join in this Agreement pursuant to the procedure set forth in paragraph 3 of this Agreement." [Settlement Agreement, p. 1]. "Collective Action Plaintiffs" are plaintiffs in Civil Action No. 14-00913-SJC, styled *Kristin Journigan v. WBY, Inc. d/b/a the Follies*. [Settlement Agreement, p.1].

The Settlement Consent Order approved the Settlement Agreement in full, with the exception of

Section 4(b), which had originally called for the creation of one class in a plan of reorganization

for all FLSA claimants to be paid 10%, but this section of the Settlement Agreement was amended

to apply only to "Settling Claimants." [Settlement Consent Order, p.3-4].

As agreed by the parties, the Court also entered the Order Granting Motion for Relief from Stay on October 7, 2016 [Doc. No. 134] with respect to the Dudley Claimants and they filed suit for FLSA violations against WBY, Inc., Steven Youngelson, Surrey White, Edward Allen, and Steven Shine on October 26 and 27, 2016.[5] The complaints were not served pursuant to the Federal Rules at that time, but Mr. Dudley contends they were emailed to opposing counsel for Debtor and the Equity Holders.

On October 24, 2016, the Debtor filed its Disclosure Statement (the "Disclosure Statement") which had attached as an exhibit the Plan of Reorganization (the "Original Plan") [Doc. No. 141]. The Disclosure Statement included a Section VI(C) titled "Co-Debtor Stay" which stated, in part:

> **Any act to collect all or any part of a debt that is to be paid under the Plan against an individual that is liable on such debt with Debtor, including but not limited to Surrey R. White, Steve Youngelson, Steven Shine, Edward "Cain" Allen, is to be stayed by the Confirmation of the Plan, and any creditor of Debtor is enjoined from attempting to collect all or any part of such debt from such individual unless and until the time of a default under the provisions of the Plan.** (emphasis in original) [Disclosure Statement, p. 25-26].

The Original Plan contained substantially similar language in Section 8.4, also titled "Co-Debtor Stay," however the language was not in bold or italicized print [Original Plan, p.9-10]. The Co-Debtor stay was contained in Article VIII, "Effect of Confirmation" but it was not specific to any class under the Plan.

The Disclosure Statement stated the following regarding Class D:

> Claimants in this Class will be paid Ten Percent (10%) of their allowed claims. Debtor will disburse not less than $500,000.00 on the Effective Date to allowed Claimants in this Class, and will

---

[5] *Becton et al v. WBY, Inc. et al* was filed on October 26th, 2016 by a group of dancers, and *Smith et al v. WBY, Inc. et al* was filed on October 27th, 2016 by two waitresses. Both plaintiffs in the *Smith* suit elected treatment under Class C of the Plan, while the *Becton* matter has plaintiffs in both classes.

disburse not less than $100,000.00 per month pro-rata to all allowed Claimants in the Class until each allowed Claimant in this Class has been paid ten percent (10%) of their allowed claim. In order to receive disbursements, Claimants in this class must timely submit a completed IRS form W-9 Request For Taxpayer Identification Number and Certification. The Settlement Agreement Opt-In Claimants will all have allowed claims and will be paid in the manner and amount set forth above. CLAIMANTS IN CLASS D ARE IMPAIRED. (emphasis in original)

The Original Plan contained the following language under the heading "Class D: Allowed Claims

of Opt-In Fair Labor Standards Act Claimants":

> Claimants in this Class will be paid ten Percent (10%) of their allowed claims. An amount of not less than $500,000 will be disbursed pro-rata to allowed Claimants in this Class on the Effective Date, and additional amounts of not less than $100,000 will be disbursed pro-rata to all allowed Claimants in this Class monthly until each allowed Claimant has received ten percent (10%) of their allowed claim. In order to receive payment, Claimants of Class D must submit a completed IRS form W-9 Request for Taxpayer Identification Number and Certification, and must do so within six (6) months from the Effective Date of the Plan. Debtor will deposit funds adequate to pay all claimants who have not submitted a completed IRS Form W-9 within a period of six months after the Effective Date of the Plan into the Debtor's counsel's IOLTA (Escrow) account and any funds remaining in escrow after six months from the Effective Date will be returned to the Reorganized Debtor or applied to payment of Class C claims. The Settlement Agreement Opt-In Claimants will have allowed claims and will be paid in the manner and amount as set forth above. CLASS D CLAIMANTS ARE IMPAIRED. (emphasis in original)

Neither the Original Plan nor the Disclosure Statement contained any language requiring the Class

D claimants to sign the Settlement Agreement, nor did either have any language in the section

containing the treatment of Class D regarding a third-party injunction or any language that

expressly incorporated the terms of the Settlement Agreement into the treatment of Class D or

attach a copy of the Settlement Agreement as an Exhibit. As stated previously, the third-party

injunction was only found in Section 8.4 of the Original Plan and Section VI(C) of the Disclosure

Statement, but not in the specific section detailing the treatment of Class D.

The deadline to object to the Original Plan and file ballots accepting or rejecting it was

December 1, 2016. Prior to that date, counsel for Debtor and the Dudley Claimants had a meeting

to discuss the potential objections to the Original Plan. Mr. Dudley testified that he and Mr. Jones

told Debtor's counsel that they would object to the inclusion of any third-party injunction in the

plan, so Mr. Danowitz agreed to take it out.  Mr. Danowitz acknowledges having that discussion,

but he testified that he thought they were only talking about the injunction as it would be applied

to Class C claimants.

On December 1, 2016, the Dudley Claimants filed their ballots accepting or rejecting the

Debtor's Original Plan.[6] The 16 Dudley Claimants who elected treatment in Class C with asserted

claims totaling approximately $1.8 million rejected the Original Plan,[7] while 31 Dudley Claimants

electing treatment in Class D with asserted claims totaling approximately $3.8 million accepted

the Original Plan.[8] On the same day, the Dudley Claimants who had indicated they were holders

of Class C claims filed an Objection to Confirmation of Plan of Reorganization [Doc. No. 393].

They objected that the Original Plan was not equitable and was not proposed in good faith because:

- It provided for compensation to the Equity Holders during the pendency of the case
  and prior to the liquidation of the Class C claims.
- There was no mechanism to address possible avoidance actions against the Equity
  Holders.

---

[6] Doc. Nos. 277-286, 288-324.

[7] The Class C Dudley Claimants are Mikki Williams, Karenna Van Hook, Jessica Saunders, Hailey Lytle, Grace King, Ebony Yarbrough, Cydney Bell, Courtney Sacdalan, Shanteria Cameron, Toni Davis, Samantha Schaffer, Rodrinna Brooks, Constance Smith, Courtney Ellington, Noelle Greene, and Soraya Barker.

[8] The Class D Dudley Claimants are Sheldon Hailey, Ashley Murphy, Ayalla Talley, Ayana Robinson, Calesia Goddard, Christina Charles, Courtney Bradley, Delisha Watkins, Desiree McGowan, Donjanae Grant, Holly Hutsell, Isabel Serrano, Janna Anderson, Jasmine Stewart, Jazzlyn Griffin, Jessica Abraham, Jolene Nyguyn, Kerra McDuffie, Latisha Blake, Latoya Becton, Michaela Harris, Nina Kim, Quina Dopoe, Raquesha McLean, Samantha Glen, Sarah Olshansky, Shannon Jackson, Shante Sylvester, Tiffany Clarke-Murphy, Tonisha Baker, and Victoria Williams.

- Class C creditors were required to provide W2's for payment and to allow the bankruptcy court to liquidate their claims.
- It allowed a 30-day cure period after default and barred claim amendments after the Confirmation Date (other than amendments to lower the amount of the claim).
- It violated the absolute priority rule.
- The interest rate was the statutory rate rather than the current prime rate.
- The third-party injunction impermissibly stayed claims against individuals.
- Class C claims were incorrectly listed as unimpaired.

The Court held a hearing to approve the Original Plan and Disclosure Statement on December 6, 2016. During the hearing counsel for the Debtor stated:

> "Your Honor, there's also a provision in the plan that as filed that would create an injunction, a stay against any prosecution of claims against people that are liable along with the Debtor on these FLSA claims and other matters. After further consideration I would like to withdraw that provision of the plan by amendment or by order of this Court. It serves a number of purposes. I think the Court does have discretion in issuing that since the Debtor is ultimately liable to pay the full amount of any judgment that may come in. But I think in removing any possible concerns that the Class C claims are impaired, if they are allowed to continue pursuing their claims against the other individuals who they claim to be liable, then I believe any suggestion of impairment is removed. I also believe that it shows good faith in doing so that we're going here to reorganize the Debtor, not to protect other people." Transcript of December 6, 2016, 17:8-17:25.

At the conclusion of this hearing the parties asked to continue the hearing until December 21, 2016 so the Original Plan could be amended. The Debtor filed its "First Amended Plan of Reorganization" (the "Amended Plan") on December 20, 2016 [Doc. No. 426]. In the Amended Plan, all prior references to a third-party injunction or a co-debtor stay were removed. At the continued hearing the parties announced that they had resolved the objections to the Original Plan either through language in the Amended Plan or through a proposed Confirmation Order that would address the remaining issues and would be controlling over any contrary language in the

Amended Plan or Disclosure Statement.  During the hearing, while discussing how the Court

wanted to address changes to the Amended Plan, counsel for the Debtor stated:

> "And none of the terms of the plan would require
> modification from what was originally disclosed, except for the fact
> that we're not having the third-party injunction." Transcript of
> December 21, 2016, 25:1-4.

The Court entered the Order Approving Disclosure Statement and Confirming Chapter 11 Plan on

December 22, 2016 [Doc. No. 428].[9] The Confirmation Order did not contain any reference to the

third-party injunction or its removal.  Basically, by removing the injunction language in Section

8.4 of the Original Plan, there was no longer any clear, direct, or express language in the Amended

Plan indicating there would be an injunction against any class of claimants with respect to claims

against the Equity Holders. The Amended Plan likewise did not contain any language requiring

the Class D claimants to sign the Settlement Agreement nor did it have any language expressly

incorporating the terms of the Settlement Agreement into the treatment of Class D or attach a copy

of the Settlement Agreement as an Exhibit.

In late January 2017 the parties filed a joint motion for mediation in order to mediate the

issues between the Debtor and the Class C Dudley Claimants and an order was entered shortly

thereafter. On or about February 8, 2017 waivers of service were sent to the Debtor and the

individual Defendants (the Equity Holders, Edward Allen, and Steven Shine) in the *Becton* and

*Smith* matters. The *Becton* case includes both Class C and Class D claimants as plaintiffs. The

waivers were executed by counsel for the Debtor and the individuals and filed with the District

Court on February 22, 2017.

---

[9] The Amended Plan as supplemented or amended by the Confirmation Order shall hereafter be referred to as the "Confirmed Plan."

On April 5, 2017, the Debtor filed a Motion to Suspend Plan Payments to Shannon Jackson, a Class D claimant, alleging that Ms. Jackson's proof of claim appeared to be grossly inflated and further investigation was needed into whether it was a fraudulent claim [Doc. No. 506]. A hearing was held on April 25, 2017, and after hearing the argument of the parties the Court denied the Debtor's Motion, finding as follows:

> I think Ms. Jackson opted in to the settlement…I think the confirmation of the Plan and her opting in, I think the Debtor is estopped from going back in and contesting the amount of her claim at this point…And so I think the – based on the binding effect of the Plan, and the Creditors are bound by it as much as the Debtors – the Debtor is – that the motion has to be denied for that reason. Transcript of April 25, 2017, 19:5-20:22.

On May 8, 2017, the Dudley Claimants filed Amended Complaints in both the *Becton* and *Smith* actions that dismissed Steven Shine and Edward Allen but left both WBY and the Equity Holders as the Defendants.

Almost three months later, on July 26, 2017, counsel for the Equity Holders filed an Emergency Motion to Modify Confirmed Chapter 11 Plan of Reorganization (the "Motion to Modify") [Doc. No. 528] asking the Court to modify the Confirmed Plan to include injunctions in favor of the Equity Holders. The Court will address the legal arguments made by the Equity Holders, the Debtor, and the Dudley Claimants in the next section. The Dudley Claimants filed their Objection to the Motion to Modify on August 7, 2017 [Doc No. 535] and a hearing was held the next day. During the hearing, the Equity Holders and the Debtor argued that it their intention that the third-party injunction would apply to all Class D Claimants through the language in the Settlement Agreement and it was the understanding of *all* parties that this would be the case. Counsel for the Equity Holders explained that Mr. Youngelson and Mr. White agreed to sign an agreement to fund the escrow account backed by a personal guaranty based on the understanding

11

that the Class D Claimants would no longer be able to pursue litigation against them individually [Transcript of August 8, 2017, 7:14-8:12]. The Equity Holders asserted that they were unaware that the Dudley Claimants in Class D were planning to continue pursuing them for the remaining 90% of their claims until May 2017 when the amended complaints were filed in the District Court [Id., 7:9-13]. Regarding the language in the confirmed Amended Plan, counsel for the Equity Holders stated:

> And it appeared to us that while the settlement agreement, which was the backbone of the Plan had provided for certain relief in [the Equity Holders] favor in exchange for them agreeing to fund certain things, that was not necessarily incorporated into the final Plan that was confirmed by this Court. And at that point, we went back and looked at the [Original] Plan and realized that certain language had been omitted, language which was key to my clients' agreement to place money into the trust to fund these claims, and also to take on the guaranty basically to provide additional funding to the extent that Class C claims were found to be greater than the amount that was in the account. What they discovered, and what has apparently occurred is that a group of claims that would be classified in Class D had not actually limited their source of recovery, which was the intention under the Plan and the settlement agreement. [Id., 8:19-9:11].

Counsel for the Dudley Claimants took the position that they objected to the third-party injunction as inappropriate in the context of a Chapter 11 Plan and did not intend that the third-party injunction would apply to any of the Dudley Claimants, whether in Class C or Class D [Id., 22:4-9].

> Counsel for Dudley Claimants: [The Amended Plan] took out – the language in the first plan, which the Debtor filed in October of last year had the exact same language in it. In fact, apparently, Mr. DeJonker cut and pasted in his motion to modify the confirmation order, in his motion to modify the Plan, the very same language which the Debtor had put in that last October, the very same language which we objected to, and the very same language that Mr. Danowitz took out of the Plan because we'd objected to it, because we fully intended to pursue our rights against the [Equity

Holders] fully, the whole time, and there was never any statement
on the record or off the record to the effect that we wouldn't. [Id.,
22:22-23:8].

In response to arguments that the Equity Holders did not have standing to move to modify

the Confirmed Plan and it was too late to modify it regardless, the Debtor filed a Motion to Clarify

Confirmation Order, or in the Alternative to Modify Confirmed Chapter 11 Plan of Reorganization

on September 10, 2017 [Doc. No. 545] to which the Equity Holders filed a "Joinder" [Doc. No.

547].  The Dudley Claimants filed their "Objection to Debtor's Motion to Clarify Confirmation

Order, or in the Alternative to Modify Confirmed Chapter 11 Plan of Reorganization" [Doc. No.

555] (the "Objection") and Debtor filed a reply in support of its Motion [Doc. No. 559]. The parties

also concurrently engaged in litigation of various other issues in multiple forums over the course

of the next year. A trial on the Motion was held and will be discussed separately below. Post-trial,

the Court asked the parties to submit proposed findings of fact and conclusions of law (and replies

to those of the other party), the contents of which will also be addressed below.

On a final note, the majority of circuits, including the 11th Circuit, have held that

all settlements of FLSA claims have to be approved by either the Department of Labor or the

District Court depending on whether the violation is being alleged by the Department of Labor

itself or by an individual against their employer through a private action. *Lynn's Food Stores, Inc.*

*v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*,

679 F.2d 1350, 1353 (11th Cir. 1982). Here, approval of any settlement of the claims by the District

Court appears to be required. Neither the Settlement Agreement nor the Confirmed Plan provided

that its effectiveness, and any injunctions contained or intended therein, was conditioned on the

approval of the settlements therein by the District Court. On February 20, 2018, about 14 months

after the entry of the Confirmation Order, the parties in the *Journigan* case filed a response to a

13

Show Cause Order in the District Court in which they requested the dismissal of the case with prejudice because of the terms reached in the Settlement Agreement.  On February 13, 2019, the Hon. Steve C. Jones entered an Order in which he declined to dismiss the case with prejudice, but instead dismissed it without prejudice to the Kaster Claimant's rights to refile. He stated that had the Settlement Agreement been brought to him for approval as required, which Settlement Agreement contained the same treatment the Debtor and Equity Holders want this Court to write into or enforce with respect to the Confirmed Plan, he would have declined to approve it because he found that the "terms are unfair and not reasonable under the circumstances." [Order of February 13, 2019, 1:14-cv-00913-SCJ].

### Brief Summary of Legal Arguments of Debtor and Equity Holders

In the Motion to Modify filed by the Equity Holders, they requested that the Court: (1) amend the Confirmation Order under Fed. R. Civ. P. 60(b) made applicable by Fed. R. Bankr. P. 9024 to include the third-party injunction, or (2) modify the plan under 11 U.S.C. § 1127(b) to add back in the injunction language that was removed prior to the Amended Plan being confirmed. The Equity Holders contended that the Confirmed Plan had not been substantially consummated at the time of the filing of the Motion to Modify because the transfer of all the money from the Equity Holders into the escrow account was not completed. Additionally, the Equity Holders asserted that the Debtor "likely" has to indemnify them on any FLSA judgments against them individually.

In the Debtor's subsequent Motion to Clarify it argued that those Dudley Claimants who had chosen treatment in Class D voted for the Original Plan that contained the third-party injunction and that this can be interpreted as evidence that they understood that they would be bound by it. Only the Class C Dudley Claimants filed an objection that included the argument that the Original Plan had an impermissible third-party injunction. The Debtor argues that its counsel

14

only removed the injunction language to satisfy those objections and that the intentions of both parties were that the third-party injunction was removed to accommodate the objection of Class C and was always intended to continue to apply to Class D. As such, Debtor asks this Court to reform the contract between the parties to correct the mistake, either by entering a separate Order directing the Class D Dudley Claimants to discontinue their litigation against the Equity Holders or clarifying the Confirmation Order by adding the third-party injunction. Debtor states that the Court "need not determine whether the mistake…was a mutual mistake of Debtor and other parties…, or a unilateral mistake of Debtor" because the Debtor made a unilateral mistake when it omitted the third-party injunction and this mistake has resulted in inequitable conduct on the part of the Class D Dudley Claimants. Additionally, the Debtor reiterates the Equity Holders' prior argument that the Court may provide relief under Fed. R. Bankr. P. 9024 or modify the plan under 11 U.S.C. § 1127(b).

The Debtor also argues that both the Settlement Consent Order and the Settlement Agreement contain the requirement that the terms of the Settlement Agreement must be incorporated in any plan. The Debtor further notes that having a Class D that contains both claimants that signed the Settlement Agreement and claimants that "opted-in" to the treatment specified in Class D but did not sign anything results in disparate treatment within one class. Regarding modification of the Confirmed Plan, Debtor argues that the Court may do so because the Confirmed Plan is "silent or ambiguous" on the issue of the third-party injunction.

### Brief Summary of Legal Arguments of the Dudley Claimants

The Dudley Claimants filed an Objection to the Equity Holders' Motion to Modify arguing that the Debtor bargained away the inclusion of the third-party injunction in order to secure confirmation of the Amended Plan and therefore it would be inequitable to re-insert it into the

Confirmed Plan. They also contend that the exceptional circumstances necessary to allow the Court to grant relief from the Confirmed Plan or Confirmation Order under Fed. R. Bankr. P. 9024 are not present because the Debtor purposefully removed the very section of text it is now seeking to have the Court reinstate. Regarding the possibility of plan modification, the Dudley Claimants assert that the Confirmed Plan has been substantially consummated such that 11 U.S.C. § 1127(b) cannot be utilized. Additionally, they point out that the Dudley Claimants who chose classification under Class D did not sign the Settlement Agreement and, therefore, they are not bound by its terms. They also claim that the confirmation of the Amended Plan is res judicata on the issue of its contents. On the issue of indemnification, they point out that the FLSA has provisions that would make the Equity Holders personally liable for reasons other than their capacity as directors of officers and thus no indemnification would be required on the part of the Debtor.

In their Objection to Debtor's Motion to Clarify, the Dudley Claimants re-iterate that the proposed third-party injunction language was intentionally removed by counsel for the Debtor and, therefore, cannot be re-added, particularly because the Confirmed Plan is not ambiguous about the injunction, but rather is purposefully silent. They also re-assert their position that the Dudley Claimants in Class D are not signatories of the Settlement Agreement and that the Confirmed Plan is res judicata on claims regarding its contents. In response to Debtor's argument that members of Class D are receiving disparate treatment because some signed the Settlement Agreement and others claim not to be bound by it, the Dudley Claimants point to 11 U.S.C. § 1123(a)(4) which allows claim holders to agree to less favorable treatment. By signing the Settlement Agreement, the Dudley Claimants argue, the Kaster Claimants consented to be bound by the third-party injunction. According to the Dudley Claimants, they never intended to be bound by the terms of the Settlement Agreement (other than the 10% payout of their claims against the Debtor only) and,

16

therefore, there is no issue of mutual mistake that would allow for reformation of the Confirmed

Plan under principles of contract law.

### The Trial

During the Trial the Court heard testimony from the Equity Holders, Ed Danowitz, and

Ainsworth Dudley. While neither of the Equity Holders was completely familiar with the portions

of the documents (the Confirmed Plan, Settlement Agreement, Tolling Agreement) related to the

current controversy, both Equity Holders testified that their understanding of the bargain the

Debtor had made in conjunction with the Settlement Agreement and the Confirmed Plan was that

those who "opted-in" would not be allowed to pursue their claims against the Equity Holders.[10]

They also testified that they would not have agreed to fund the escrow account and sign a personal

guaranty had they known that was not the case.

Ainsworth Dudley testified that at a meeting with Ed Danowitz on November 23, 2016 he

and Mr. Jones raised the objections they intended to make to the Original Plan, and Mr. Danowitz

agreed that the third-party injunction would be removed. The Amended Plan comported with Mr.

Dudley's understanding of the changes Mr. Danowitz had said he would make regarding the third-

party injunction. He also testified that all FLSA settlements must be approved by the District Court

as "fair and reasonable" and no release of third parties would be binding without District Court

approval. Mr. Dudley testified the Debtor and the Equity Holders were aware he took the position

that the Class D Dudley Claimants still had claims against the Equity Holders during the entire

pendency of the case because the District Court complaint filed in October 2016 named the

individuals and the claims against the individuals were not dismissed after confirmation of the

---

[10] Youngelson testified that he was an attorney for several decades before retiring from the practice of law.  He also
testified that he did not use e-mail, so in order to review documents he either had to receive them in the mail, go to
counsel's office, or discuss them telephonically and authorize counsel to file papers and pleadings.

Amended Plan. He also testified about an email he received from Mr. Danowitz on March 17, 2017 which stated that "[Mr. Dudley's] plans to relitigate the Class D opt-in claims in the District Court" was an impediment to the upcoming mediation being successful. Dudley questioned why the Debtor and the Equity Holders had waited so long before bringing a motion before the Court addressing the Class D Dudley Claimants continued litigation against the Equity Holders given the fact that they clearly knew about it well beforehand. When asked why some of his clients chose treatment in Class C when his understanding of the treatment in Class D would automatically provide them with 10% of their claims and allow them to continue litigation against the Equity Holders, Mr. Dudley stated that he could not explain why his clients made certain choices.[11]

Mr. Danowitz testified that the meeting in November with Mr. Dudley and Mr. Jones did occur, but that he thought the focus of the meeting was the objections of the "opt-out" or Class C creditors and the only Class D related discussion was about tax forms.[12] He stated that it was his intention that the Dudley Claimants that chose treatment under Class D would be bound by the same terms as those who actually signed the Settlement Agreement. He admits that he did not specifically name the Class C claimants as those he was speaking of when he agreed to take out the injunction language because he did not think it was necessary because he thought both parties knew who they were discussing. He chose to remove the language rather than change it or move it elsewhere in the Amended Plan because he believed that Class D was agreeing to the same

---

[11] This Court thinks it is possible that the financial situation of a claimant could explain why a claimant might choose to take a guaranteed payment of only 10% of a claim now from the Debtor and then litigate only against the Equity Holders for the balance rather than wait years to know if she would be entitled to anything against the Debtor and the Equity Holders.

[12] As of the date of this meeting, no objections or ballots had yet been filed so all of the Dudley Claimants were technically Class C Claimants as provided for in the Original Plan. Given this fact, it seems at least as likely that Dudley and Jones were negotiating these issues on behalf of all of their clients because they had not yet elected to be in separate classes.

treatment as the Settlement Agreement signatories based on the language in the Settlement Consent

Order and Settlement Agreement.

**Legal Analysis**

The Movants have proposed several methods by which the Court may find that the third-

party injunction is (or may become) a part of the Confirmed Plan and binds the Class D Dudley

Claimants. Each is discussed below.

## I.        Modification

The Movants contend that this Court may modify the Confirmed Plan to include the third-

party injunction in favor of the Equity Holders. Modification of a plan is governed by 11 U.S.C. §

1127, which states in relevant part:

> The proponent of a plan or the reorganized debtor may
> modify such plan at any time after confirmation of such plan and
> before substantial consummation of such plan. Such plan as
> modified under this subsection becomes the plan only if
> circumstances warrant such modification, and the court, after notice
> and a hearing, confirms such plan as modified, under section 1129
> of this title. 11 U.S.C. §1127(b).

The Code does not define modification, but courts have stated that it is a change that

"alter[s] the legal relationships among the debtor and its creditors and other parties in interest." *In*

*re Ionosphere Clubs, Inc.*, 208 B.R. 812, 816 (S.D.N.Y. 1997). The Movants cite to a 7th Circuit

case which held that a court may deny a modification if such modification would "upset legitimate

expectation[s]" of creditors (the Movants use the word "contradict" instead of "upset" in their

argument). *In re Envirodyne Indus.*, 29 F.3d 301, 304 (7th Cir. 1994). The Movants assert that the

circumstances that led up to the confirmation of the Amended Plan as well as the testimony of

some of the entertainers demonstrates that the Dudley Claimant's expectations were that the Class

19

D members would be barred from pursuing claims against the Equity Holders.[13] Unfortunately for the Movants, based on the plain language of the Confirmed Plan the legitimate expectation of the creditors would have been that there was no third-party injunction after the injunction language was removed from the Original Plan by the Amended Plan. The Court acknowledges a few of the thirty entertainers gave testimony that showed they were either confused about the ramifications of electing to join Class D or indicated that they thought the lawsuit would terminate upon payment of the 10%. However, at various times both sides have argued that these are not sophisticated parties and, therefore, the Court must rely more heavily on the pleadings and argument of counsel over the somewhat flummoxed statements of a small percentage of the entertainers when they were being deposed by the opposing parties. The fact that a few of the entertainers did not know or were perhaps incorrect about what was happening with their claims post-confirmation does not necessarily lead to the conclusion that all parties had agreed that Class D would be barred from pursuing the Equity Holders and that the Dudley Claimants had impermissibly found a "loophole" post-confirmation.[14]

Regardless of the nature of the requested change, a plan cannot be modified once it has been substantially consummated. Section 1101(2) of the Code provides:

> "Substantial consummation" means— (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan. 11 U.S.C. §1101(2).

---

[13] The Movants cite to the deposition testimony of only 3 entertainers who had chosen Class D treatment. There are approximately 30 Dudley Claimants in Class D.

[14] The Court wants to be very clear that the problem was not created by the Dudley Claimants nor was there any deceit or trickery on their part that induced the Debtor to remove the injunction in the Amended Plan.

All three prongs of the definition must be met to find that the plan has been substantially consummated. Section (B) is not in question here because the Debtor has continued to manage the business as it did pre-petition. Similarly, whether Section (C) has been satisfied is not being debated as it only requires the "commencement" of distribution and Class D Claimants had been receiving distributions for quite some time. Therefore, this Court must determine whether "all or substantially all of the property proposed by the plan to be transferred" has, in fact, been transferred. The Movants argue that because the Equity Holders "still have not transferred a substantial amount of funds to the reserve account" (used to pay the Class C and D claimants) that Section (A) is not satisfied and the Confirmed Plan is not substantially consummated. The Dudley Claimants argue that the transfers addressed by Section (A) are not meant to include the sort of property transfer that occurs when the Equity Holders fund a portion of the account used to pay Classes C and D. The Court notes that the Original Plan does not appear to have anticipated the Equity Holders contributing money from their personal accounts in order to fund the escrow account to pay the Class C claims. Because of concerns about money that had allegedly been improperly distributed by the Debtor to the Equity Holders, counsel for the Dudley Claimants negotiated a Tolling Agreement that required the Equity Holders to provide a personal guaranty to back up the funding of the Reserve Account.

It is a settled rule that "a statute must, if possible, be construed in such fashion that every word has some operative effect." *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 36 (1992). If Section (A) was meant to include distributions to creditors as a "transfer of property" proposed by the Plan, then Section (C) would be rendered meaningless. *In re Hayball Trucking, Inc.*, 67 B.R. 681, 683 (Bankr. E.D. Mich. 1986). The Dudley Claimants argue that the Confirmed Plan does not propose any sort of property transfer to take place, and this Court agrees. Section 8.2 of the

Confirmed Plan states: "Re-vesting of Property of the Estate: Confirmation of the Plan vests all property of the estate in the Reorganized Debtor free and clear of claims and interests of creditors and Equity Security Holders, unless otherwise provided in the Plan."

The Court recognizes that the Movants are not only arguing that Section (A) is meant to address the Debtor making distributions to creditors, but rather that it should also address the act of the Equity Holders moving money from their personal accounts to the Debtor for distribution. This puts too fine a point on the idea that there is some substantial and discernible difference between where the money is coming from to pay the Dudley Claimants. The $100,000 monthly deposits into the escrow that are currently occurring are either coming from the Debtor's operating income or from money the Equity Holders have taken in the form of salary or other distributions from the Debtor. This Court is not willing to find that the Confirmed Plan is not substantially consummated simply because the Equity Holders have not yet fully funded the escrow account by transferring money from their personal accounts that they received from the operations of the Debtor, particularly when it is alleged that the distribution of those funds may have been a fraudulent transfer. As such, the Court finds that the Plan is substantially consummated and cannot be modified under 11 U.S.C. § 1127.

## II.        Clarification

The Movants have also suggested that this Court may "clarify" the Confirmed Plan to find that it incorporates the Settlement Agreement and/or the Settlement Consent Order. They argue that doing so would have the effect of applying the third-party injunction to all members of Class D. The Court is unsure as to whether this action would have the effect that the Movants desire. The Settlement Agreement makes no mention of the Dudley Claimants, in fact it explicitly states that it is an agreement between the "Collective Action Plaintiffs," Tiara Payne, and Tashia

Anderson (collectively, the "Claimants"). The Settlement Consent Order, which approves the Settlement Agreement, states that any references contained in the Order to "Settling Claimants" refer to "Claimants" as the term is defined in the Settlement Agreement, and therefore this would also not include the Dudley Claimants. Additionally, the Settlement Consent Order requires only that any plan filed by the Debtor will give objecting parties the "right to elect to join the class of Settling Creditors and obtain the same payment and treatment of their claims *as provided for in the Plan*…" (emphasis added) [Doc. No. 135, ¶ 6]. The provisions related to Class D in the Confirmed Plan provide for a 10% payout to Class D and do not enjoin Class D from further pursuit of the Equity Holders in District Court. In fact, the Original Plan contained the exact same language describing the treatment of Class D, because Section 8.4 describing the Co-Debtor Stay was a separate section and was not referenced in the specific treatment of Class D in the Original Plan. Had counsel for the Debtor not removed Section 8.4 and the Original Plan been confirmed the injunction would have presumably applied to all classes if the settlement - and injunction therein - was ultimately approved by the District Court.

*In re Appliance Now, Inc.* is the most analogous case to the instant dispute that the Movants and this Court have been able to find. *In re Appliance Now, Inc.*, 568 B.R. 843 (Bankr. M.D. Fl. 2017). In that case, five years after the entry of the post-confirmation order and one year after they were paid, several unsecured creditors sought clarification of language in the confirmed plan that appeared to allow claims for "gross negligence or willful misconduct" to continue post-confirmation. *Id.* at 847. The same plan also included sections which discharged the debtor from all pre-confirmation debt and enjoined any party from collection activity against the debtor post-confirmation. *Id.* at 846. Clearly there was conflicting language within the same plan document and the court cited the apparent intent of the parties as well as the idea that the plan was a contract

23

between the debtor and its creditors as reasons to strike the specific language that allowed the claims to survive from the plan, calling it a "scrivener's error." *Id.* at 849. Here, there does not seem to be a dispute over whether the third-party injunction was removed in a "scrivener's error" because the Movants admit that it was purposefully taken out. Setting aside the indemnification issue for now, that removal did not alter the relationship between the Debtor and the claimants but only the relationship between the Equity Holders and the claimants. Whether the Movants failed to appreciate the consequences of taking such an action at the time is a separate issue, but there is nothing for the Court to clarify because that language was removed and no conflicting or ambiguous language regarding the third-party injunction remained in the Confirmed Plan.

## III.      Contract Interpretation and Reformation

The Movants also assert that an interpretation of the Confirmed Plan under principles of contract law leads to the conclusion that the Settlement Consent Order and Settlement Agreement were incorporated therein and, therefore, those documents bind the Dudley Claimants. In their Motion, Movants state that "the plain meaning of contract language governs its interpretation," but extrinsic evidence may be reviewed if a provision is ambiguous.  In re FFS Data, Inc., 776 F.3d 1299, 1304 (11th Cir. 2015); *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014). The problem here is that there is no ambiguous language in the Confirmed Plan about a third-party injunction because there is no language *at all* about a third-party injunction. Debtor and the Equity Holders point to several phrases within the Confirmed Plan that they assert require the Court to refer to the Settlement Agreement or Settlement Consent Order to interpret. For example, they cite to Section 4.2C of the Confirmed Plan which describes Class C claimants as those "who have not opted into the Class D settlement of Fair Labor Standard Act claims" as evidence that Class D members opted into the Settlement Agreement. But one could easily read that sentence,

refer to the treatment of members of Class D as explicitly written in the Amended Plan, and assume that those who chose Class D treatment "settled" by accepting 10% of their claim in exchange for only the Debtor receiving a discharge of the remainder. That interpretation is certainly what the Dudley Claimants argue is accurate.

The Movants also state that Section 4.2C of the Amended Plan states that Class D will "receive payments 'according to the terms' under which Class D received payment under the Settlement Agreement." [Doc. No. 612, p. 33]. This is an inaccurate statement as there is no mention of the Settlement Agreement in that section. It simply states that the payments will be received "according to the terms of payment to allowed Class D claims." The next section sets forth the terms of payment for Class D claimants and does not contain an injunction of any kind in favor of the Equity Holders. Section 4.2D contains the only reference to the Settlement Agreement in the phrase "Settlement Agreement Opt-In Claimants." The same section also references Class D Claimants several times and explains how they will be paid before the final sentence of the paragraph: "The Settlement Agreement Opt-In Claimants will have allowed claims and will be paid in the manner and amount as set forth above." [Amended Plan, p. 7]. Read as a whole this paragraph would seem to indicate that Class D Claimants and Settlement Agreement Opt-In Claimants are not synonymous terms, or at least that the drafter wanted to indicate that those claimants who had previously signed the Settlement Agreement would be paid in the same manner as those who later opted in to treatment in Class D. In other words, the paragraph implies that all those who opted into the Settlement Agreement are a part of Class D, but there are other Class D members who are not parties to the Settlement Agreement and have simply chosen treatment in Class D. Even if these phrases did somehow allow this Court to conclude that the Settlement Agreement and/or Settlement Consent Order was incorporated into the Plan, as

previously stated it does not necessarily follow that the Dudley Claimants in Class D are bound by the third-party injunction. [See Section II: Clarification].

The Movants also claim that because the Amended Plan makes several references to the Settlement Agreement and paraphrases its terms, the Court may find that it is implicitly incorporated in the Plan. [Doc. No. 612, p. 35]. The problem with that argument is that the Plan does not make several references to the Settlement Agreement, it makes only one, and even that reference is to "Settlement Agreement Opt-In Claimants," not the "Settlement Agreement" itself. Unfortunately for the Movants, the Confirmed Plan does not paraphrase or mention the one term that this entire litigation revolves around, the third-party injunction.

Debtor and the Equity Holders state that the Court may use its equitable powers to reform the Confirmed Plan to contain the injunction. However, it is well-settled that "equitable powers… in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code," and "[t]he equity power of section 105(a) cannot be used to produce a result contrary to the specific provisions of section 1127(b)." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988); 7 Collier on Bankruptcy P 1127.03.

The Movants also suggest that the Confirmed Plan may be reformed as a contract under the doctrine of mutual mistake. Under Georgia law, "[o]n the ground of mutual mistake, equity will not reform a written contract unless the mistake is alleged and proved to be the mistake of both parties." *Daniel v. Lipscomb*, 483 S.E.2d 325, 327 (1997). "In order to justify relief in equity to a party claiming mistake, "the evidence should be clear, unequivocal, and decisive as to the mistake...." *Id*. Here, the evidence is neither unequivocal nor decisive. While it is clear that the third-party injunction was removed purposefully, it is disputed what the parties understood to be the effect of its removal at the time. This Court cannot grant the extraordinary relief of reformation

26

in equity when there is this much uncertainty about whether there was actually a mistake, and if so, whether the mistake was mutual or unilateral.

## IV.        Indemnification

Debtor and the Equity Holders have repeatedly asserted that the Indemnification Clause contained in Debtor's Bylaws would require it to be ultimately responsible for any successful FLSA claims against the Equity Holders in the District Court and, therefore, a lack of third-party injunction would hurt the Debtor. The Indemnification Clause is cited by the Movants as evidence that Debtor and the Equity Holders intended that the third-party injunction would apply to all holders of Class D claims. However, that argument is not persuasive as to whether the injunction is part of the Confirmed Plan. As pointed out by the Dudley Claimants, the Debtor did not schedule, and the Equity Holders did not file, any claim for indemnification for pre-petition conduct, and the Debtor has therefore been discharged from that obligation. This Court also questions, without making any finding on the issue, whether the indemnification provision would cover a finding of individual liability in an FLSA action because liability under the FLSA is not necessarily based on the individual being an officer, director, or member, but rather other factors.

## V.         Other Arguments

The Movants also argue that the Settlement Agreement can be viewed as a "lock-up" or plan support agreement so the Court may enforce its terms on the debtor and negotiating creditors. Debtor and the Equity Holders would like the Court to consider the Dudley Claimants to be negotiating creditors of the Settlement Agreement, however the record appears to indicate that they were not involved in the negotiations that resulted in the document, but rather they negotiated with the Movants after they objected to the Motion to Compromise. The Movants own submission states that the Settlement Agreement was created "following negotiation and an agreement

27

between counsel for the Kaster Claimants and counsel for Debtor." [Doc. No. 612, p. 6]. There is also no dispute that the Dudley Claimants were never signatories to the Settlement Agreement at any point. Given Judge Jones' Order declining to dismiss the Kaster Claimant's case with prejudice and stating he would not have approved the Settlement Agreement if it was put before him because it seems unreasonable, it seems particularly inappropriate for this Court to impose or enforce the injunction found in that very same Settlement Agreement on claimants who never signed it just because the Debtor says it intended it to apply to Class D even after removing it from the Amended Plan.

In response to the Movants' suggestion that the Court re-insert the third-party injunction into the Confirmed Plan, counsel for the Dudley Claimants cites to Bankruptcy Rule 3016(c) which provides that "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement shall describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction." Fed.R.Bankr.P. 3016(c). Obviously this Rule is not satisfied in the Confirmed Plan because the third-party injunction was removed, but the Court notes that the Original Plan as filed also does not satisfy Rule 3016 as the text of Section 8.4 describing the co-debtor stay is neither bold, nor italic, nor underlined.

The purpose of Rule 3016(c) is to prevent this very type of litigation that is now before the Court. Injunctions or releases must be clearly displayed in a plan of reorganization so there is no confusion. Had it been the intention of the Debtor to enjoin claims against the Equity Holders, the Settlement Agreement easily could have been incorporated into the Confirmed Plan and the third-party injunction easily could have been inserted to apply to Class D. Besides simply stating explicitly within the Amended Plan that all of the terms of the Settlement Agreement, including

28

the injunction, were incorporated into Class D, and attaching a copy of it to the Amended Plan, the

Debtor could have:

- Required all parties that chose treatment in Class D to sign the Settlement Agreement (as the Kaster Plaintiffs presumably did)
- Stated on the ballot that choosing treatment in Class D meant the claimant was bound by the terms of the Settlement Agreement, including the injunction
- Included in a definitions section a definition of "Settlement Agreement," "Opting In," etc. and made sure those terms were used consistently between all documents
- If, as Debtor seems to have believed, the Dudley Claimants objection to the third-party injunction was only on behalf Class C Claimants, the injunction language could have been moved to the section describing the treatment of Class D Claims or Section 8.4 could have been made to be applicable only to Class D or expressly exclude Class C.

These are just a few examples of the easy ways in which this issue could have been avoided,

and there are likely others. The bottom line is had the Debtor complied with Rule 3016(c) to

describe its alleged intention, this issue would not be before the Court. Based on that, there is no

basis to grant the extraordinary relief the Movants seek.

Finally, as alternative relief, the Movants requested that the Court issue an order directing

the Class D Dudley Claimants to cease their pursuit of claims against the Equity Holders in the

District Court. Because the Court does not find that the third-party injunction applies to the Class

D Dudley Claimants, the Court declines to do so.

**CONCLUSION**

Simply put, at this stage in the proceeding there is no way in law or equity for this Court

to re-insert or otherwise enforce injunctive language that was purposefully removed from the

Original Plan by the Debtor to bar further litigation in the District Court between the Class D

Dudley Claimants and the Equity Holders. As such, it is hereby

**ORDERED** that the Motion to Clarify Confirmation Order, or in the Alternative to Modify

Confirmed Chapter 11 Plan of Reorganization is **DENIED**.